765 P.2d 683

**FIRST SECURITY BANK OF IDAHO, N.A., a national banking association, Plaintiff-respondent,**

v.

**A. John GAIGE and Neta E. Gaige, husband and wife, Defendants-appellants.**

No. 17156.

Supreme Court of Idaho.

Dec. 5, 1988.

Holland & Hart, Langroise, Sullivan, Boise, for defendants-appellants. Steven B. Andersen, argued, Boise.

Moffatt, Thomas, Barrett & Blanton, Boise, for plaintiff-respondent. Loren C. Ipsen and Mark B. Perry, argued, Boise.

BAKES, Justice.

First Security Bank of Idaho (First Security) seeks to collect from a guarantor, A. John Gaige (Gaige), and his wife, Neta E. Gaige (Mrs. Gaige), the amount due on promissory notes executed by a corporate debtor, A.J. Gaige & Associates, Inc. (the company), a metal fabricating business. The district court resolved all issues by granting summary judgment in favor of First Security and by dismissing the Gaiges' counterclaim. We affirm.

## I

In 1978, the company sought and obtained a $250,000 line of credit from First Security. The company's inventory and accounts receivable were used as collateral to secure the line of credit. Gaige, president and controlling shareholder of the company, also signed a personal guaranty for payments on the company's debt, not to exceed $250,000 plus accrued interest. Financial statements submitted to the bank disclosed Gaige's personal net worth in excess of $1 million.

On March 27, 1980, First Security loaned the company an additional $233,000 to construct a building. The loan was secured by a first deed of trust on the building. Gaige signed a personal guaranty on this loan also.

During its borrowing relationship with First Security, the company's credit line fluctuated. Gaige signed numerous personal guaranties varying in amount according to the fluctuations. The last guaranty he signed, dated July 18, 1983, was for $500,000 plus interest.

The company, although initially profitable, sustained losses in 1982 and 1983. On July 24, 1984, Gaige advised First Security that he was going to liquidate the company by the end of the year. By August 6, 1984,

the line of credit was due and payable in full, yet was unpaid. Still unpaid by August 22, 1984, the principal outstanding on the line of credit was $450,000, as evidenced by a promissory note signed by Gaige as the company's president. To secure the line of credit, the company also gave First Security a second deed of trust on its building. In addition, Gaige signed an affirmation of the July 18, 1983, guaranty for $500,000 as part of a "loan workout agreement" between First Security, the company and Gaige. The loan workout agreement was negotiated between the bank and Gaige and his attorney and was a mechanism which gave the company until January 1, 1985, to have a more orderly liquidation of its assets in order to meet its debt obligation to the bank. Absent this agreement, the bank would have immediately foreclosed on the deed of trust or acted upon the guaranty sooner than it did. The four-month liquidation effort by the company did not produce amounts sufficient to satisfy all the indebtedness by January 1, 1985. As a result, First Security foreclosed non-judicially on the first deed of trust. On May 20, 1988, the company building was sold by the trustee, Title & Trust Company. First Security was the highest bidder, bidding $300,000. After crediting the amount bid to the notes and accrued interest, a principal balance remained on the August 24, 1984, note of $351,104.37. First Security later sold the building for $310,000, netting, after sale costs, approximately $280,000.

First Security chose not to repossess or foreclose upon any remaining collateral or attempt collection of any remaining accounts receivable. No deficiency judgment was sought against the company. Instead, First Security sued Gaige and his wife on the personal guaranties for the balance owing.

In defense of the action on the guaranties, Gaige asserted that the deed of trust anti-deficiency statute, I.C. § 45–1512, precluded First Security from bringing the action on the guaranties. The district court granted partial summary judgment to First Security, holding that the anti-defi-

ciency statute, I.C. § 45–1512, did not apply to guarantors. Additionally, the district court held that, "By terms of the guaranty, A. John Gaige effectively waived defenses available to the principal debtor under the Idaho deed of trust anti-deficiency statute, § 45–1512, Idaho Code."

Later, the district court granted summary judgment for First Security on the remaining issues and dismissed the Gaiges' counterclaim for failure to state a claim upon which relief may be granted. The counterclaim alleged (1) fraud; (2) breaches of contract, fiduciary duty and the implied terms of good faith and fair dealing; (3) negligence; and (4) rescission. The district court held that (1) the July 18, 1983, guaranty is clear, unambiguous and enforceable; (2) it is neither bad faith nor obligatory that First Security first proceed against the company's inventory and accounts or bid the alleged fair market value of the building; (3) the alleged representations by bank loan officers are inadmissible as parol evidence since these oral statements would vary and contradict the written guaranty; (4) even if admissible, the statements are promises of future events and not misrepresentations of existing fact which is the basis of a fraud action; and (5) even if Gaige had been fraudulently induced to sign the July 18, 1983, guaranty, he expressly ratified or reaffirmed the guaranty in the loan workout agreement of August 22, 1984, with full knowledge of all the facts constituting the alleged fraud, based on the advice of his own attorney. First Security was awarded judgment against Gaige on the guaranty in the amount of $390,253.65, the stipulated principal, plus interest, together with $1,670.10 costs and $44,315.78 attorney fees.

## II

■ The first issue we address is whether our anti-deficiency statute, I.C. § 45–1512,[1] applies to Gaige as a guarantor. Resolution of this issue had been reserved previously in *Valley Bank v. Larson*, 104 Idaho 772, 663 P.2d 653 (1983). We decide it today, and we hold that it does not.

I.C. § 45–1512 applies to claims by a creditor secured by a deed of trust for the balance due after a deed of trust sale. The protection in I.C. § 45–1512 is given to the borrower-grantor who gives the security interest described in the deed of trust. However, Gaige was not the borrower-grantor who gave the security interest covered by the deed of trust. The corporation, A.J. Gaige & Associates, Inc., was the borrower and grantor of the security. John Gaige merely guaranteed that debt.

Gaige argues that I.C. § 45–1512 protection should extend by implication to guarantors on public policy grounds because guarantors and deed of trust debtors alike share a need for protection from creditors who desire to recover their indebtedness secured by the deed of trust. While there may be arguments for extending anti-deficiency protection to guarantors, that action is for the legislature to do, not the court. In some states, such as Alaska, the legislature saw fit to extend protection to guarantors, AS § 34.20.100 (1985); at present ours has not. Although the Nevada court is apparently "convinced that it is unsound to deny guarantors the benefits of [anti-deficiency] legislation," *First Interstate Bank of Nevada v. Shields*, 730 P.2d 429, 431 (Nev.1986), a majority of state courts considering the issue have declined to expand

---

1. **"45–1512. Money judgment—Action seeking balance due on obligation.**—At any time within 3 months after any sale under a deed of trust, as hereinbefore provided, a money judgment may be sought for the balance due upon the obligation for which such deed of trust was given as security, and in such action the plaintiff shall set forth in his complaint the entire amount of indebtedness which was secured by such deed of trust and the amount for which the same was sold and the fair market value at the date of sale, together with interest from such date of sale, costs of sale and attorney's fees. Before rendering judgment the court shall find the fair market value of the real property sold at the time of sale. The court may not render judgment for more than the amount by which the entire amount of indebtedness due at the time of sale exceeds the fair market value at that time, with interest from date of sale, but in no event may the judgment exceed the difference between the amount for which such property was sold and the entire amount of the indebtedness secured by the deed of trust."

the coverage of the statute to those not covered by the statute. *See Bank of America National Trust & Savings Ass'n v. Hunter*, 8 Cal.2d 592, 67 P.2d 99 (1937); *Bank of Kirkwood Plaza v. Mueller*, 294 N.W.2d 640 (N.D.1980); *Riverside National Bank v. Manolakis*, 613 P.2d 438 (Okla. 1980). We deem it better policy to follow the wording of the statute and leave any expansion of coverage to the legislature.

■ The trial court also held that by express language in the guaranty Gaige contractually waived any anti-deficiency protection, based on our decision in *Valley Bank v. Larson*, 104 Idaho 772, 663 P.2d 653 (1983). In *Valley Bank v. Larson*, *supra*, we recognized that, even assuming that the protection afforded to a principal debtor by [the anti-deficiency statute] were to inure to the benefit of the guarantor of the debt, "[a] guarantor may legally contract to waive a defense provided by [the] anti-deficiency judgment statute." 104 Idaho at 774, 663 P.2d at 655. The district court did not err in upholding the waiver contained in the guaranty agreement.

■ Gaige also claims to have a real property interest in the company's building as the result of an unrecorded deed of trust dated "March 9, 1994" (sic). However, he cites no authority for the proposition that the holder of such an unrecorded second deed of trust on the company's building should receive the protection of the anti-deficiency statute when he is sued on the guaranty agreement. The statute, I.C. § 45–1512 affords none, and it is controlling.

### III

■ Next we address the issue of summary judgment dismissal of Gaige's counterclaim. The facts alleged in the counterclaim are essentially the same as Gaige's affirmative defenses. When Gaige and his attorney negotiated the loan workout agreement on July 24, 1984, which reaffirmed the guaranty with full knowledge of all the facts, he knowingly waived the factual claims upon which the counterclaim was based. The facts alleged in the counterclaim were essentially the same as those relied on for Gaige's affirmative defenses to the guaranties. Those factual claims, whether in the form of a counterclaim or defense, were waived by the language in the guaranty, as reaffirmed in the workout agreement.

■ Gaige claims First Security loan officers fraudulently induced him to sign the July 18, 1983, guaranty by assuring him that the guaranty was a mere formality and that the bank would satisfy company debt from company assets before pursuing the guaranty. As the trial court correctly pointed out, these assurances were at best promises of future performance and, as such, could not form the basis of a fraud claim to defeat First Security's right to enforce the "CONTINUING UNCONDITIONAL GUARANTY." Furthermore, when Gaige signed the loan workout agreement on August 22, 1984, he voluntarily ratified the July 18, 1983, guaranty with full knowledge of the true nature of the unconditional guaranty obligation. He therefore waived any fraud claim.

The August 22, 1984, loan workout agreement was negotiated at arms length between First Security and Gaige, who was represented by counsel. The parties arrived at a compromise which allowed the company to continue operations in spite of its precarious financial situation and inability to meet debt payments. This compromise allowed Gaige the opportunity to quietly liquidate the company's assets as a going concern, thereby obtaining the maximum value possible. First Security also gave up its right to foreclose and its right to sue on the guaranty until January, 1985.

■ Gaige claims that the "real deal" between himself and First Security is not found exclusively in the July 18, 1983, written guaranty, but also consists of oral representations from bank loan officers. The alleged oral representations essentially take away First Security's unconditional ability to collect on the guaranty, a clear contradiction of the guaranty's written terms. The parol evidence rule, as properly applied by the district court, will not allow the introduction of evidence of prior

oral negotiations which contradict or vary the terms of a completely integrated writing, which the July 18, 1983, guaranty is. Furthermore, Gaige ratified the terms of the July 18, 1983, guaranty by negotiating and executing the August 22, 1984, loan workout agreement which makes no reference to any additional oral terms. The trial court did not err in rejecting Gaige's attempts to modify the terms of the written guaranty by parol evidence.

## IV

 In his counterclaim and as a defense, Gaige claims First Security breached a duty of good faith and fair dealing implied in the guaranties. However, we agree with the trial court's ruling that First Security did not breach any duty to Gaige by merely exercising its express rights under the guaranty agreement. There is no basis for claiming implied terms contrary to express rights contained in the parties' agreement.

## V

Gaige argues that the separate property of his wife, Neta Gaige, should not be subject to judgment. On this point there is no disagreement. In its brief, First Security concedes Neta Gaige's "separate property would not be available to satisfy the judgment" in this case. We agree. No modification of the trial court's judgment is necessary to accomplish that result.

## VI

First Security seeks costs and attorney fees on appeal based on Section 11 of the July 18, 1983, guaranty contract which reads:

> "Guarantors jointly and severally agree to pay a reasonable attorney's fee and court costs if this guaranty be placed with an attorney for collection or enforcement or if suit be instituted thereon, including attorney's cost and fee on appeal."

Having prevailed in their action, the bank is entitled to costs and attorney fees under this provision.

The judgment of the district court is affirmed. Costs and attorney fees to respondent.

SHEPARD, C.J., and BISTLINE, HUNTLEY and JOHNSON, JJ., concur.