805 P.2d 468

**FIRST SECURITY BANK OF IDAHO, N.A., a nationally chartered banking corporation, Plaintiff–Respondent,**

v.

**Lewis M. WEBSTER and Velma M. Webster, husband and wife, Defendants–Appellants.**

**No. 18210.**

Supreme Court of Idaho, Boise, September 1990 Term.

Jan. 28, 1991.

Clemons, Cosho & Humphrey, Boise, for defendants-appellants. Kathryn A. Sticklen argued.

Hepworth, Nungester & Lezamiz, Twin Falls, for plaintiff-respondent. John C. Hohnhorst argued.

JOHNSON, Justice.

This case involves a guaranty and a real estate mortgage that were given to a bank in connection with a loan by the bank. The primary issue presented is whether the parol evidence rule was properly applied to preclude consideration of evidence offered to vary the terms of the guaranty and the mortgage. Secondary issues concern whether fraud was sufficiently alleged to permit the consideration of this evidence and whether the trial court had jurisdiction to entertain motions to amend a pleading and to compel production of documents that were made after the filing of a notice of appeal. We affirm the grant of summary judgment in favor of the bank and the denial of the motions that were made after the appeal was filed.

## I. THE BACKGROUND AND PRIOR PROCEEDINGS.

In the summer of 1983, Daniel Webster (Daniel) applied to First Security Bank (the bank) for a loan to open an automobile dealership. Prior to July 20, 1983, Daniel was advised by a loan officer of the bank that the bank had approved financing for

the dealership if Daniel could obtain a suitable guaranty for the initial promissory note of approximately $26,000.00.

Daniel's father, Lewis Webster, agreed to provide the guaranty. Lewis and his wife Velma (the Websters) agreed to meet Daniel at the offices of a title company on July 20, 1983, to sign the guaranty and a real estate mortgage in connection with the bank's loan to Daniel. Before this meeting occurred, the bank determined that the guaranty and the mortgage would have to cover not only Daniel's initial note, but also Daniel's $100,000.00 line of credit for flooring automobiles.

The loan officer prepared the guaranty and the mortgage that the bank required the Websters to sign as a condition of the bank agreeing to finance Daniel's new business. The guaranty included the following provisions:

1. The Websters guaranteed all indebtedness that Daniel owed to the bank or that he might thereafter incur, not to exceed $126,000.00, "as principal, together with interest on such part of the principal not exceeding [$126,000.00]."

2. The bank might permit Daniel's indebtedness to exceed $126,000.00.

3. The liabilities of the Websters under the guaranty would continue until payment in full of all Daniel's indebtedness to the bank guaranteed by the Websters.

4. The Websters assumed the responsibility for keeping themselves informed of Daniel's financial condition and of all other circumstances bearing upon the risk of nonpayment of his indebtedness to the bank.

The mortgage stated that it was given in consideration of $126,000.00 and was intended to secure the guaranty by which the Websters guaranteed Daniel's indebtedness of $126,000.00 and any other indebtedness of Daniel owed to the bank.

Daniel and a loan officer from the bank met the Websters at the title company office on July 20, 1983. The Websters were upset when they read the guaranty and mortgage and learned that they would be guaranteeing an obligation of $126,000.00, instead of $26,000.00 as they had originally understood. Before the Websters signed the guaranty and the mortgage, they believed there would always be $100,000.00 worth of automobiles on Daniel's lot. They understood that this would protect them from being liable for more than $26,000.00 under the guaranty and the mortgage. The Websters then signed the guaranty and the mortgage. In reliance on the guaranty and the mortgage, the bank provided Daniel with the financing to start his automobile dealership.

In June 1987, Daniel owed the bank approximately $250,000.00. The bank exercised its rights under security agreements with Daniel and took possession of automobiles that were collateral for the financing the bank had provided. These automobiles were sold at public auction and produced net proceeds of $86,391.01. The bank applied the proceeds from the sale to Daniel's loan, leaving a balance of $170,468.57, including both principal and accrued interest.

Daniel filed bankruptcy proceedings and was discharged from further liability to his creditors in December 1987. The bank then commenced this action against the Websters to recover under the guaranty and to foreclose the mortgage. Among the affirmative defenses alleged in their answer, the Websters alleged that they did not understand and agree to the terms of the guaranty and the mortgage and that the bank led them to believe that the guaranty was not unlimited, but rather was limited. The Websters also counterclaimed against the bank, alleging that their signatures on the mortgage were obtained by fraud, because the mortgage had been altered after they signed it.

The bank moved for summary judgment, supported in part by the depositions of the Websters and Daniel. In their depositions, the Websters admitted that Daniel, and not someone from the bank, was the one who had represented to them that there would always be $100,000.00 worth of automobiles on his lot. They also admitted that no one from the bank was present when Daniel made this representation.

In opposition to the bank's motion for summary judgment, the Websters filed affidavits in which they stated that a representative of the bank was present when it was explained to them that even though the guaranty was for $126,000.00, "there was only $26,000 at risk because the $100,000 was to be used to purchase an automobile inventory and the bank would always make sure there was $100,000 worth of automobiles there to satisfy that obligation."

The trial court granted summary judgment against the Websters dismissing their counterclaim and their affirmative defenses and entered a judgment and decree of foreclosure determining that the Websters were indebted to the bank in the principal sum of $126,000.00, plus interest of $26,833.35. The Websters moved to alter or amend the judgment pursuant to I.R.C.P. 59(e) on the ground that the guaranty was conditional and limited. This motion was supported by an affidavit of the loan officer who had negotiated the terms of the loan with Daniel. The affidavit stated that the bank took the mortgage for the limited and conditional purpose of securing Daniel's $26,000.00 note and money for flooring automobiles not to exceed $100,000.00. In a second affidavit, the loan officer stated that at the time the Websters signed the guaranty and the mortgage the bank would not authorize, nor did it intend to authorize, Daniel to borrow more than $126,000.00.

While their motion to alter or amend the judgment was pending, the Websters appealed to this Court from the judgment and decree of foreclosure. Within a few days, the trial court heard arguments on the motion to alter or amend and took the matter under advisement. Before the trial court made its decision on this motion, different counsel appeared for the Websters. This new counsel filed a supplemental or amended motion to alter or amend the judgment, a motion for leave to file a second amended counterclaim, and a motion for relief from judgment pursuant to I.R.C.P. 60(b)(1) and (6). While these motions were pending, the Websters requested the production of documents from the bank

and filed a motion to compel the bank to respond to the request.

The trial court denied all of the post-judgment motions filed by the Websters and awarded the bank attorney fees pursuant to I.C. § 12–120(3) and because both the guaranty and the mortgage provided for the award of attorney fees. This appeal then proceeded.

## II. THE TRIAL COURT PROPERLY APPLIED THE PAROL EVIDENCE RULE.

The Websters assert that the trial court improperly applied the parol evidence rule in excluding the affidavits of the Websters in opposition to the bank's motion for summary judgment. We disagree.

The Websters first argue that the parol evidence rule is not applicable because the guaranty and the mortgage were ambiguous as to the indebtedness that was guaranteed and for which the mortgage was given. The Websters argue that the guaranty and the mortgage are conflicting because the guaranty in two places and the mortgage in one place refer to "any and all indebtedness" of Daniel, while the guaranty in a third place refers to liability not to exceed $126,000.00. We do not see this as an ambiguity, but rather as a general statement of liability with a subsequent limitation of the liability to $126,000.00.

The Websters next argue that in granting the bank's motion for summary judgment the trial court improperly weighed the testimony of the Websters in their depositions against the statements of the Websters in their affidavits. This argument misperceives the manner in which the trial court considered the deposition testimony of the Websters and refused to consider their affidavits.

The issues to which the affidavits of the Websters were directed were the allegations of the Websters that the guaranty and the mortgage were unenforceable because there was no meeting of the minds and that the guaranty was given for limited purposes and for a limited amount. In granting summary judgment in favor of

the bank, the trial court referred to the deposition testimony of the Websters as not being inconsistent with the unconditional nature of the guaranty and the mortgage. This was not in violation of the parol evidence rule, since the testimony was not offered to vary the terms of the guaranty and the mortgage. In rejecting the affidavits of the Websters, the trial court stated that the Websters offered the affidavits "for the express purpose of varying or contradicting the complete, clear, unambiguous, unconditional guarantee executed by [the Websters]." This was a proper application of the parol evidence rule.

■ Recently, this Court has reaffirmed that parol evidence is not admissible to vary the terms of a written guaranty that is completely integrated. *First Sec. Bank of Idaho v. Gaige*, 115 Idaho 172, 175–76, 765 P.2d 683, 686–87 (1988). The Websters contend that *Gaige* is distinguishable because in that case the guaranty contained an express provision that the written agreement contained the entire agreement of the parties, while in this case the guaranty did not contain an integration provision. However, comparing the July 18, 1983 guaranty that was at issue in *Gaige* with the July 20, 1983, guaranty that is at issue here reveals that both guaranties were on identical printed forms supplied by the same bank and neither included an express provision that the guaranty contained the entire agreement of the parties. Therefore, the parol evidence ruling in *Gaige* is directly applicable to this case.

The Websters also contend that the affidavits they submitted in opposition to the motion for summary judgment should have been considered by the trial court, because they had alleged fraud and misrepresentation in their answer to the bank's complaint and because parol evidence is admissible to support allegations of fraud and misrepresentation. *Glenn Dick Equip. Co. v. Galey Constr. Co.*, 97 Idaho 216, 541 P.2d 1184 (1975). Specifically, the Websters argue that their second and fourth affirmative defenses, coupled with the affidavits they submitted in opposition to the bank's motion for summary judgment, raised the issue of fraud and misrepresentation on the part of the bank in securing the Websters' signatures on the guaranty.

The Websters' second affirmative defense alleged that they did not understand or agree to the nature or extent of the guaranty or the mortgage. Their fourth affirmative defense alleged that the Websters were led to believe by the bank that the guaranty was not unlimited, but rather was limited. They argue that these allegations should be liberally construed to do substantial justice and should be construed so as to allege all of the facts that can be implied by fair and reasonable intendment from the facts expressly stated, citing I.R.C.P. 8(f) and *Fox v. Cosgriff*, 64 Idaho 448, 133 P.2d 930 (1943).

We note that the first time the Websters asserted that they should be allowed to introduce parol evidence to prove that they had been induced to sign the guaranty and the mortgage was after new counsel appeared on their behalf and filed a supplemental or amended motion to alter or amend the judgment. In the memorandum in support of this supplemental or amended motion, the Websters for the first time contended that the affidavits of the Websters, their son, and the loan officer of the bank should have been considered under an exception to the parol evidence rule where the evidence is presented for the purpose of showing fraud.

■ The trial court properly ruled that the affidavit of the bank's loan officer that was submitted after judgment had been entered would not be considered in deciding the motion to alter or amend the judgment under I.R.C.P. 59(e). The purpose of motions under that rule is "to allow the trial court ... to correct errors both of fact and law that had occurred in its proceedings." *First Sec. Bank v. Neibaur*, 98 Idaho 598, 603, 570 P.2d 276, 281 (1977). Consideration of I.R.C.P. 59(e) motions must be directed to the status of the case as it existed when the court rendered the decision upon which the judgment is based. *Coeur d'Alene Mining Co. v. First Nat'l Bank of N. Idaho*, 118 Idaho 812, 800 P.2d 1026 (1990).

Prior to the advent of the Idaho Rules of Civil Procedure in 1958, this Court followed the rule that "where a party seeks to recover on the ground of fraud, the particular facts constituting the fraud must be definitely and positively alleged." *Moser v. Pugh–Jenkins Furniture Co.*, 31 Idaho 438, 441, 173 P. 639, 639 (1918). When the present rules of civil procedure were adopted by this Court, this requirement was carried forward. I.R.C.P. 8(c) requires that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively" a specified list of defenses, including fraud. I.R.C.P. 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity."

In *Witt v. Jones*, 111 Idaho 165, 722 P.2d 474 (1986), this Court considered the adequacy of allegations of fraud by a party opposing summary judgment. Citing *Faw v. Greenwood*, 101 Idaho 387, 389, 613 P.2d 1338, 1340 (1980), this Court set forth the nine elements of a cause of action for fraud:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury.

111 Idaho at 168, 722 P.2d at 477.

In *Witt*, this Court then examined the pleadings and affidavit of the party opposing the motion to determine whether she had alleged "with any degree of particularity facts which would support the existence of the elements of cause of action for fraud." *Id.* This Court noted:

> In fact, the complaint, apart from permissible general allegations of knowledge, only makes the conclusory allegation that "devious tactics [were] imposed by Defendants to thwart Plaintiff...." There are no particular factual allegations disclosing what these so-called tactics were, what made them devious, or

> when they were made. [The nonmoving party's] affidavit discloses nothing beyond the fact that she was unaware of the property settlement agreement until after her father's death and was unaware of the change of designation of beneficiaries under the insurance policy until sometime in July, 1981. Her affidavit contains no allegations that this lack of information regarding either the property settlement agreement or the designation of beneficiaries under the policy resulted from any acts of fraud or concealment on the part of [the moving party].

*Id.*

Implicit in this analysis in *Witt* is the premise that in determining the adequacy of allegations of fraud that are considered in opposition to a motion for summary judgment, the trial court must consider both the nonmoving party's pleadings and any affidavits of the nonmoving party filed in opposition to the motion for summary judgment. Considering both the allegations contained in the Websters' second and fourth affirmative defenses together with the affidavits of the Websters and their son, there are not sufficient allegations of fraud to permit the admission of extrinsic evidence.

The most that can be said for the allegations contained in the Websters' second and fourth affirmative defenses in terms of the particularity required by I.R.C.P. 9(b) is that the fourth affirmative defense alleges that the Websters were led to believe by the bank that the guaranty was not unlimited, but rather was limited. In their affidavits the Websters stated that in the presence of the representative of the bank it was explained to the Websters that "notwithstanding the fact that the Guaranty was for $126,000 there was only $26,000 at risk because the $100,000 was to be used to purchase an automobile inventory and the bank would always make sure there was $100,000 worth of automobiles there to satisfy that obligation." The Websters do not state who explained this to them.

Daniel stated in his affidavit:

Upon entering [the title company] offices, LEWIS M. WEBSTER asked directly the representative of First Security Bank ... if he was sure that there would always be sufficient automobile inventory to cover the One Hundred Thousand Dollar ($100,000) obligation, to which [the bank's representative] assured him that there always would be sufficient inventory on the lot.

Daniel also stated that Lewis Webster would not have signed the guaranty if the representative of the bank had not assured him there would always be sufficient automobile inventory to cover the debt.

Construing these statements contained in the affidavits of the Websters and Daniel as additional allegations of particular circumstances of fraud as required by I.R.C.P. 9(b), the purported representation by the representative of the bank was a promise or a statement as to a future event—making sure that there would always be at least $100,000.00 worth of automobiles on Daniel's lot. Although this type of promise or statement is not ordinarily the basis upon which a claim for fraud may be maintained, "when there is an affirmative promise or statement that a certain act will be undertaken, such a statement is actionable providing the other elements of fraud are shown." *Sharp v. Idaho Inv. Corp.*, 95 Idaho 113, 122, 504 P.2d 386, 495 (1972).

Here, there was no allegation that the representation of the representative of the bank was false. There is no allegation in the affirmative defenses or in the affidavits submitted in opposition to the bank's motion for summary judgment that the bank did not intend to keep this promise. Even the bank's failure to fulfill a promise to make sure that there would always be $100,000.00 worth of automobiles on Daniel's lot would not support an action for fraud, unless the promise was made without the intent to keep it. *Pocatello Sec. Trust Co. v. Henry*, 35 Idaho 321, 328–29, 206 P. 175, 177 (1922); *Keane v. Allen*, 69 Idaho 53, 61, 202 P.2d 411, 416 (1949). Therefore, we conclude that the Websters did not allege fraud with sufficient particularity to permit the admission of extrinsic evidence under an exception to the parol evidence rule.

The trial court correctly applied the parol evidence rule in granting summary judgment in favor of the bank.

## III. AFTER THE WEBSTERS FILED THIS APPEAL, THE TRIAL COURT HAD NO JURISDICTION TO CONSIDER THE MOTION TO AMEND THEIR COUNTERCLAIM AND THE MOTION TO COMPEL THE BANK TO PRODUCE DOCUMENTS.

■ The Websters assert that the trial court abused its discretion in not granting the Websters' motions to amend their counterclaim and to compel the bank to produce documents. We disagree. Because both of these motions were made after the Websters had appealed to this Court from the judgment and decree of foreclosure, the trial court had no jurisdiction to consider these motions.

In *H & V Eng'g, Inc. v. Idaho State Bd. of Professional Eng'rs*, 113 Idaho 646, 648, 747 P.2d 55, 57 (1987), this Court said:

Once a notice of appeal has been perfected the district court is divested of jurisdiction and the proceedings are stayed during the pendency of the appeal. *Dolbeer v. Harten*, 91 Idaho 141, 144, 417 P.2d 407, 410 (1966). There are exceptions to this general rule, and they are specifically enumerated in [I.A.R.] 13. For example, the district court is empowered to settle the transcript on appeal, rule upon a motion for a new trial, or, rule on any motion to amend *its own* findings of fact or conclusions of law. I.A.R. 13(b)(1–3) (Supp.1986).

I.A.R. 13 does not authorize the district court during the pendency of appeal to rule on a motion to amend a party's pleadings or a motion to compel production of documents. The trial court was correct in denying the Websters' motions.

## IV. CONCLUSION.

We affirm the trial court's order granting summary judgment to the bank and the denial of the Websters' motions to amend

their counterclaim and to compel production of documents.

We award attorney fees on appeal to the bank as provided for in the guaranty together with costs.

BAKES, C.J., BISTLINE, and BOYLE, JJ., and BAIL, J., Pro Tem., concur.