824 P.2d 887

**Josephine P. WILLIS, as Personal Representative of the Estate of Elnora D. Wise, Deceased, Plaintiff–Counterdefendant–Appellant–Respondent on Appeal–Cross Appellant on Appeal,**

v.

**REALTY COUNTRY, INC., an Idaho corporation, Defendant–Counterplaintiff–Respondent–Appellant on Appeal–Cross Respondent on Appeal.**

No. 18427.

Court of Appeals of Idaho.

Nov. 5, 1991.

Rehearing Denied Dec. 9, 1991.

Petition for Review Denied Feb. 28, 1992.

Samuel A. Hoagland, Boise, for appellant.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for respondent. Brent Roche, argued, Pocatello.

SILAK, Judge.

In this case, Elnora D. Wise (now deceased), the beneficiary of a deed of trust on a motel in Chubbuck, instituted a foreclosure proceeding against the grantor of the deed, the Pickens. While the foreclosure was pending, Wise assigned her rights under the deed of trust to Realty Country, Inc., appellant and cross-respondent. However, prior to conveying her interest in the property, she caused fixtures to be removed from the property, and damaged the property. After the closing on the assignment of the deed of trust, assignee Realty Country repaired the damage to the property prior to the foreclosure sale. The assignee then made a full credit bid at the foreclosure sale, for the amount due on the promissory note. Later, Realty Country attempted to offset the cost of the repairs from its payments on the contract. Mrs. Wise's estate filed a petition for declaratory judgment asking the court to declare that the assignee was not entitled to the offset. The magistrate held that the assignee was entitled to the offset. On appeal, the district court reversed the judgment of the magistrate. We set aside the decision of the district court and affirm the decision of the magistrate.

The issues in this case are whether the magistrate correctly granted a declaratory judgment in favor of Realty Country and whether a full credit bid at a foreclosure sale precludes the assignee from obtaining any remedy against the assignor for causing damage to the property. We are also asked to decide whether the magistrate erred in refusing to allow the estate to claim interest on uncashed checks.

## I. FACTS AND PROCEDURAL BACKGROUND

The essential facts of this case are as follows. Elnora D. Wise owned and operated a hotel in Chubbuck, Idaho. Mrs. Wise sold the hotel to a Mr. and Mrs. Pickens in 1973. Part of the sale price was represented by a promissory note secured by a deed of trust. The Pickens tore down a residence located on the property and built an office from which Mr. Pickens operated his electrical business. Later, they remodeled part of the hotel for use as a beauty shop by Mrs. Pickens.

In 1980, the Pickens defaulted on their payments on the note. Mrs. Wise initiated non-judicial foreclosure proceedings under the power of sale in the deed of trust; however, these proceedings were stayed when the Pickens filed bankruptcy. In November, 1980, Mrs. Wise filed an amended complaint in the bankruptcy court to lift the automatic stay so she could continue with the foreclosure proceedings. On January 27, 1981, the bankruptcy court lifted the stay and Mrs. Wise was allowed to proceed with her remedy of foreclosure.

On February 4, 1981, following several months of negotiation, Mrs. Wise entered into a contract with Realty Country to assign her rights under the deed of trust to the corporation.[1] Under the "Assignment of Deed of Trust" contract, Realty Country agreed to pay Mrs. Wise the principal due under the Pickens' contract, to increase the interest rate from 6% to 10%, and to pay all the foreclosure costs, as well as all the expenses and attorney fees associated with the foreclosure and sale to Realty Country. The total purchase price was $56,386.32. Under the contract, Realty Country made an initial down payment of $12,130.36 at the time of the closing, with the remaining balance of $44,256.06 to be paid in monthly installments of $425. According to the contract, Realty Country would pursue the foreclosure proceedings, and, after the foreclosure, deliver a deed of trust to Mrs.

---

1. Realty Country is a closely held Idaho corporation which was owned by three brothers, Bart Parrish, Max Parrish, and Rodney Parrish, at the time this transaction occurred. Max Parrish died before the trial in this matter took place. At present, Bart Parrish is the sole owner of Realty Country.

Wise to secure the principal balance due. Under clause 1(c) of the assignment contract, Mrs. Wise was to retain possession of the deed of trust and the supporting note until the foreclosure was completed. The contract also provided that Mrs. Wise would retain all monies paid by Realty Country as liquidated damages in the event Realty Country defaulted on the agreement.

After the contract negotiations had been completed, but before the agreement was signed, Mrs. Wise had all the locks on the buildings changed.[2] She allowed unidentified third persons to enter the property. Those persons removed fixtures, appliances, and furnishings. Among the items removed were toilets, water heaters, doors and frames, cabinets, shelving, heating units, sinks, and light fixtures. Many of the items were removed in a negligent manner causing significant damage to the interior of the buildings.

The Parrish brothers, who were the owners of Realty Country, had inspected the premises approximately two weeks before the contract closed and were unaware of the damage at the time of the closing. Mrs. Wise did not disclose her actions at the time of the closing. On February 5, 1980, after the assignment had been fully executed, the Parrishes discovered the damage to the property. The Chubbuck Police Department investigated the matter, and the F.B.I. was called into the case because of the possibility of bankruptcy fraud. Eventually, Mrs. Wise admitted having given the keys to third parties and authorizing those persons to remove property, but she refused to disclose their identities.

On February 18, 1981, Max Parrish wrote to Mrs. Wise stating that Realty Country would continue to abide by the terms of the contract, but would claim an offset for the replacement value of the missing property and the cost to repair the damages done to the premises. Realty Country estimated that the cost of repairs would be between $8,000 and $12,000. Realty Country offered to allow Mrs. Wise to return the fixtures in order to reduce the cost of repairs; however, she never made an attempt to restore the missing fixtures. Ultimately, the total offset claimed by Realty Country for repairs and replacement of fixtures was $9,292.70.

Under the terms of the assignment contract, Realty Country proceeded with the foreclosure. The foreclosure sale was held on June 17, 1981. Realty Country was the only bidder at the foreclosure sale and bought the property at the bid price of $57,348.66. This price represented the amount owed to Mrs. Wise under the assignment agreement plus the foreclosure costs.

In January, 1984, Realty Country began placing restrictive endorsements on the payment checks to Mrs. Wise. The endorsements stated that Mrs. Wise acknowledged the balance of the debt which, in turn, reflected the offset for the repairs.[3]

**2.** Under the rule at common law, a deed of trust places legal title to the property in the trustee. *Brown v. Bryan,* 6 Idaho 1, 51 P. 995 (1898); *see also* G. OSBORNE, G. NELSON, & D. WHITMAN, Real Estate Finance Law 11–13 (1979). *See generally,* D. DOBBS, Handbook on the Law of Remedies, 38–40 (1973). Under Idaho law, a deed of trust is a mortgage with a power of sale; the legal title is conveyed to the trustee solely for the purpose of security. The deed of trust leaves in the grantor a legal estate which entitles the grantor to possession of the property and all incidents of ownership; the exception to this is the trustee's power to sell the property in the event of the grantor's default on the underlying obligation. *See Long v. Williams,* 105 Idaho 585, 587, 671 P.2d 1048, 1050 (1983); I.C. § 45–1506. In the present case, Mrs. Wise, the beneficiary of the trust deed, had no legal estate in the property; however, she had initiated foreclosure proceedings and appeared to be in effective control of the property at the time the damage occurred.

**3.** The restrictive endorsement was first placed on check number 000040, dated January 10, 1984, and stated:

Endorsement of this check will acknowledge that all payments on deed of trust note securing interest of Elnora Wise on property located at 4866 Yellowstone are current through January, 1984 and that the unpaid balance due after applying this payment is $29,660.40 and that interest paid on this note during 1983 was $3,077.18.

Subsequent endorsements indicated the amount of each payment applied to interest, the amount

Mrs. Wise accepted and cashed each of the next eight checks. She became ill in July, 1984, and died in November, 1984. Before Mrs. Wise's death, her daughter, Josephine Willis, began handling some of her financial affairs. In March, 1985, Mrs. Willis, who became the personal representative of her mother's estate, disputed Realty Country's assertion of the offset cost. She stopped cashing the payment checks in March, 1985. Forty-four checks, each in the amount of $425, were issued between March, 1985, and October, 1988, and remained uncashed to the time of trial. The total amount of these checks is $18,700.

In November, 1986, Mrs. Willis, acting as the personal representative of the Estate of Elnora D. Wise, filed a petition for a declaratory judgment, seeking a declaration that Realty Country was not entitled to an offset for the claimed repairs and replacement costs. Realty Country answered the petition and counterclaimed that it was entitled to the offset. At the trial, the Estate attempted to present an additional claim that Realty Country owed interest on the uncashed checks.

The magistrate entered two memorandum decisions. In the first decision, the magistrate concluded that the assignment contract had not been modified to reflect the offset, but that Realty Country was entitled to the offset, under the theory that "the taking and destruction of the property amounted to unlawful conversion." The magistrate reasoned that Realty Country had decided not to rescind the original assignment contract, but to instead make the necessary repairs to restore the property to its previous condition, and to then charge Mrs. Wise for repairs. The magistrate specifically found that Realty Country did not get what it bargained for under the assignment contract. Apparently invoking its power as a court of equity, the magistrate concluded that Realty Country had the right to repair the damages, enforce the contract, and charge an offset against the money it owed to Mrs. Wise. It is evident that the magistrate weighed the equities of the situation, found that there was no ade-

applied to principal, and the total balance due

quate remedy at law, and concluded that, in the interest of justice and equity, Realty Country was entitled to an offset. Neither party has ever challenged the magistrate's application of an equitable remedy.

In the first decision, the magistrate also concluded that the Estate could not amend its pleadings to include a claim for interest on the uncashed checks. The magistrate declined to award attorney fees to either party, but found that Realty Country was the prevailing party and awarded it costs.

The Estate filed a "Motion to Amend the Findings of Fact and Conclusions of Law." In the motion to amend, the Estate argued that Realty Country was not entitled to an offset because it had made a full price bid at the foreclosure sale. In support of this argument, the Estate cited *Cornelison v. Kornbluth*, 15 Cal.3d 590, 125 Cal.Rptr. 557, 542 P.2d 981 (1975), discussed below. The magistrate found the present case factually distinguishable from *Cornelison*. The magistrate further found that Realty Country's pleadings were sufficient to frame a cause of action in tort and that the limitation set forth in *Cornelison* does not apply where a third party injures the property. The magistrate stated in the second memorandum decision:

> When the right of reversion passed to the Defendant's [sic] it also included the right to sue these third parties. Even though it appears that Mrs. Wise would not have done so, such a right was not excluded from the contract. It is here again that this case takes an unusual twist. The police (Chubbuck and F.B.I.) became involved in investigating the theft of property. Mrs. Wise had knowledge of their identity. She refused to reveal it. It was from those statements that I find Mrs. Wise acted to ratify the acts of these third parties acts [sic] which then made her responsible for the damages which these unidentified the third [sic] parties committed. This ratification occurred after she had transferred all her interest to the Defendants and was a third party herself. The Defendant's [sic] could also collect the dam-

after the payment.

ages sought for the repairs under a theory of tort.

Basically the magistrate concluded that, even if *Cornelison* would preclude an equitable offset under a contract theory, it would not preclude a recovery in tort. Based on this reasoning, the magistrate denied the motion to amend and awarded attorney fees to Realty Country in the amount of $5,500 pursuant to I.C. § 12–120.

The Estate then appealed to the district court which reversed the magistrate's holdings. The district court concluded that, under *Cornelison*, Realty Country's full credit bid at the trustee's sale precluded it from recovering damages in either tort or contract. The district court also found that the magistrate abused his discretion by refusing to allow the estate to amend its pleadings to assert a claim for interest on the uncashed checks. The district court further found that the estate was entitled to recover interest in the amount of $3,806.25. On the issue of attorney fees, the district court reversed the award of attorney fees and costs to Realty Country and found that each party should bear its own attorney fees and court costs for the appeal.

## II. STANDARD OF REVIEW

■ As a preliminary matter, we note our standard of review. Where a district court sits as an appellate court for the purpose of reviewing a magistrate's judgment, the district court is required to determine whether there is substantial evidence to support the magistrate's findings of fact. If those findings are so supported, and if the conclusions of law demonstrate

proper application of legal principles to the facts found, then the district court will affirm the magistrate's judgment. The judgment also will be upheld on further appeal. *Hentges v. Hentges,* 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988). Where, as here, the issues before the appellate court are the same as those considered by the district court sitting in an appellate capacity, the appellate court will review the trial record with due regard for, but independently from, the district court's decision. *Robinson v. Joint School District No. 331,* 105 Idaho 487, 670 P.2d 894 (1983).

## III. FULL CREDIT BID

■ We turn first to the issue whether Realty Country's full credit bid at the foreclosure sale precludes it from recovering the costs of repairing the damage to the property. As authority for this proposition, the Estate cites *Cornelison.* In *Cornelison,* the court, interpreting the California anti-deficiency statute, held that a beneficiary under a deed of trust who purchased property at a private foreclosure sale by bidding the outstanding balance was not entitled to recover damages in an action for waste against the successor-in-interest of the original grantor of the deed of trust.

To determine this issue, we look to our own anti-deficiency statute, I.C. § 45–1512.[4] Our Supreme Court has determined that the protection in I.C. § 45–1512 extends only to the borrower-grantor who gives the security interest in the deed of trust. *First Security Bank of Idaho, N.A. v. Gaige,* 115 Idaho 172, 174, 765 P.2d 683, 685 (1988). The Court stated that the protection in I.C. § 45–1512 did not extend to

4. I.C. § 45–1512 states:

**Money Judgment—Action seeking balance due on obligation.**—At any time within three months after any sale under a deed of trust, as hereinbefore provided, a money judgment may be sought for the balance due upon the obligation for which such deed of trust was given as security, and in such action the plaintiff shall set forth in his complaint the entire amount of indebtedness which was secured by such deed of trust and the amount for which the same was sold and the fair market value at the date of sale, together with interest

from such date of sale, costs of sale and attorney's fees. Before rendering judgment the court shall find the fair market value of the real property sold at the time of sale. The court may not render judgment for more than the amount by which the entire amount of the indebtedness due at the time of the sale exceeds the fair market value at that time, with the interest from date of sale, but in no event may the judgment exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by the deed of trust.

the guarantor and declined to extend the coverage of the anti-deficiency statute to those not specifically covered by the statute:

> While there may be arguments for extending anti-deficiency protection to guarantors, that action is for the legislature to do, not the court. In some states, such as Alaska, the legislature saw fit to extend protection to guarantors, AS § 34.20.100 (1985); at present ours has not. Although the Nevada court is apparently "convinced that it is unsound to deny guarantors the benefits of [anti-deficiency] legislation," *First Interstate Bank of Nevada v. Shields,* [102 Nev. 616] 730 P.2d 429, 431 (Nev.1986), a majority of state courts have declined to expand the coverage of the statute to those not covered by the statute. *See Bank of America National Trust & Savings Ass'n v. Hunter,* 8 Cal.2d 592, 67 P.2d 99 (1937); *Bank of Kirkwood Plaza v. Mueller,* 294 N.W.2d 640 (N.D. 1980); *Riverside National Bank v. Manolakis,* 613 P.2d 438 (Okla.1980). We deem it better policy to follow the wording of the statute and leave any expansion of coverage to the legislature.

*Gaige,* 115 Idaho at 174–75, 765 P.2d at 685–86. Following the majority view on this issue, our Supreme Court clearly made a policy decision to interpret narrowly our anti-deficiency statute.

Applying *Gaige* to the present case, the Pickens were the borrower-grantors entitled to protection under the Idaho anti-deficiency statute; in the event that Realty Country had sued the Pickens for the cost of repairing the property, the full credit bid would have precluded the action. However, Mrs. Wise is the assignor of beneficial rights under the deed of trust. Relying on our Supreme Court's interpretation of I.C. § 45–1512, we conclude that Mrs. Wise is not entitled to protection under the anti-deficiency statute. Thus, *Cornelison* is not applicable to the facts of this case. Consequently, Realty Country's full credit bid at the foreclosure sale does not preclude it from recovering from the Estate the costs of repairing the property.

## IV. PROOF OF OFFSET AMOUNT

■ Anticipating the possibility that this Court might rule in Realty Country's favor, the Estate continues to assert, as it did in district court, that the magistrate's findings regarding the amount of the offset are clearly erroneous. Though the Estate actually framed the issue as a challenge to the magistrate's findings regarding the amount of damages in tort, we note that the amount reflects the reasonable cost of repairs which was, in turn, the amount offset from the principal balance. Our role in reviewing such a finding of fact is limited. We do not weigh the evidence, nor do we substitute our view of the facts for the view of the trial judge. *Ortiz v. Dept. of Health & Welfare,* 113 Idaho 682, 683–84, 747 P.2d 91, 92–3 (Ct.App.1987). We merely determine whether the finding is supported by substantial, albeit conflicting, evidence in the record. If so, the finding cannot be deemed clearly erroneous. *Rasmussen v. Martin,* 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983). We regard evidence as "substantial" if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. IDAHO APPELLATE HANDBOOK §§ 3.3.1 and 3.3.2.2 (Idaho Law Foundation, Inc. 1985). As corollaries to these general principles, we give due regard to the special opportunity of the trial court to judge the credibility of witnesses appearing personally before it. I.R.C.P. 52(a). We also recognize the trial court as the arbiter of the weight, if any, ascribed to expert opinion testimony. *Simpson v. Johnson,* 100 Idaho 357, 362, 597 P.2d 600, 605 (1979). Thus, we are not authorized to overturn a trial court's finding of fact, when it is supported by substantial evidence, even though we might have viewed the evidence differently had we sat as the triers of fact. E.g., *Cox v. Cox,* 84 Idaho 513, 373 P.2d 929 (1962); *Challis Irrigation Co. v. State,* 107 Idaho 338, 341, 689 P.2d 230, 233 (Ct.App.1984).

The record in the present case indicates that both parties presented testimony regarding the cost of repairing the damages. Realty Country presented the testimony of

Bart Parrish, who supervised the repair work, and Gary Campbell, who actually helped perform the work. Bart Parrish testified regarding their attempts to keep the cost of the repairs down, and Gary Campbell testified regarding the difficulty of the repair work, the materials needed to complete the work, and the cost of labor. We conclude that the testimony from these two witnesses is substantial evidence which supports the magistrate's findings of fact regarding the cost of the repairs which were offset from the contract. We acknowledge that there was conflicting evidence on this issue; however, we decline the Estate's invitation to substitute our opinion for that of the magistrate.

## V. INTEREST ON UNCASHED CHECKS

We turn next to the question whether the magistrate erred in declining the Estate's request to amend its pleadings to include interest on the uncashed checks. The decision to grant or deny permission to amend the pleadings is left to the sound discretion of the trial court. *Jones v. Watson*, 98 Idaho 606, 570 P.2d 284 (1977). When an exercise of discretion is reviewed on appeal, the appellate court conducts a multi-tiered inquiry. The sequence of the inquiry is (1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Center v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991); *Associates Northwest, Inc. v. Beets*, 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App.1987).

Here, the decision whether to allow an amendment of the pleadings was properly identified as a matter of discretion. The next question is whether the judge's discretionary alternatives were governed by particular legal standards. In its petition for declaratory judgment, the Estate did not raise the issue of interest on the uncashed checks in the body of the pleading or in the prayer for relief. The issue of interest on the uncashed checks was not raised until October of 1988 when the case was tried before the magistrate. Under I.R.C.P. 9(g), special damages must be specifically pled:

> When items of special damages are claimed, they shall be identified by category and the specific dollar amount may be stated....

I.R.C.P. 9(g). The magistrate held that this issue was not raised in the pleadings as is required by the Rules of Civil Procedure. Having reviewed the record, we note that counsel for the Estate sent demand letters to Realty Country asking that Realty Country allow the uncashed checks to be cashed without prejudice to the Estate's right to contest the validity of the claimed credit. Counsel for the estate also requested that Realty Country not include the restrictive notation on any of the subsequent payment checks. The magistrate concluded that these letters were not sufficient to provide notice to Realty Country that the issue of interest on the uncashed checks was before the court. The Estate presented no evidence that the checks were returned or rejected. Although the district court on appeal never specifically ruled that the magistrate abused his discretion in denying the amendment to the pleadings, it substituted its own discretion and reversed the judgment of the lower court. We conclude that the magistrate's decision was consistent with the applicable legal standards enunciated in I.R.C.P. 9(g), and that he reached the decision by an exercise of reason. Thus, we reinstate the decision of the magistrate and hold that the Estate is not entitled to interest on the uncashed checks.

## VI. ATTORNEY FEES

Finally, we turn to the issue of attorney fees. Following the estate's motion to amend the findings of fact and conclusions of law, the magistrate entered an amended judgment and memorandum decision awarding Realty Country attorney fees in the amount of $5500. The district court reversed the magistrate's decision and re-

versed the award of attorney fees, finding that each party prevailed in part. Because we have affirmed the magistrate's judgment, we reinstate the original award of attorney fees to Realty Country.

## VII.  CONCLUSION

In summary, we conclude that Realty Country was entitled to an offset for the cost of repairing the damage to the property, and that the magistrate did not err by refusing to allow the Estate to amend its pleadings to include a claim for interest on the uncashed checks.  Additionally, we reinstate the magistrate's award of attorney fees to Realty Country and award costs and attorney fees on appeal to Realty Country pursuant to I.C. § 12–120.

WALTERS, C.J., and SWANSTROM, J., concur.