IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 42932

AGSTAR FINANCIAL SERVICES, ACA,  )
  )
  Plaintiff-Appellant-  )
  Cross Respondent,  )
  )  Boise, February 2016 Term
v.  )
  )  2017 Opinion No. 17
NORTHWEST SAND & GRAVEL, INC., an )
Idaho Corporation; GORDON PAVING  )  Filed: February 24, 2017
COMPANY, INC., an Idaho Corporation; )
BLACKROCK LAND HOLDINGS, LLC, )  Stephen Kenyon, Clerk
an Idaho Limited Liability Company,  )
  )
  Defendants-Respondents-  )
  Cross Appellants,  )
  )
and  )
  )
TOWN AND COUNTRY BANK, INC.;  )
and FIRE SERVICE OF IDAHO, INC.,  )
  )
  Defendants-Respondents.  )

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County.  Hon. Randy J. Stoker, District Judge.

The judgment of the district court is <u>vacated</u> in part, <u>reversed</u> in part, and the case is <u>remanded</u> for further proceedings.

Givens Pursley LLP, Boise, for appellant.  Kersti H. Kennedy argued.

Robinson & Tribe, Rupert, for respondents.  Brent T. Robinson argued.

_____

J. JONES, Justice Pro Tem.

  AgStar Financial Services, ACA (AgStar) appeals from the district court's award of attorney fees under Idaho Code section 12-120(3) to Northwest Sand & Gravel, Inc., Gordon Paving Company, Inc., and Blackrock Land Holdings, LLC (collectively, Gordon Paving), following a deficiency proceeding. Gordon Paving's cross-appeal asserts that the district court erred in three respects: (1) by permitting AgStar to sell personal property serving as collateral for

1

Gordon Paving's debt to AgStar after the district court determined that AgStar was not entitled to a deficiency judgment; (2) by awarding AgStar post-judgment attorney fees pursuant to Idaho Code section 12-120(5); and (3) allowing AgStar's claim of exemption to a royalty check. We vacate in part, reverse in part, and remand for further proceedings.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

AgStar is a financial services company that offers financing to agricultural and industrial operations. Gordon Paving was in the business of mining and selling gravel and sand used primarily for paving.

On December 10, 2007, Gordon Paving borrowed $9 million from AgStar, issued a bond in AgStar's favor, and secured the obligation with various pieces of equipment and personal property and by mortgaging its interest in a commercial real estate parcel and five gravel pits. Between 2007 and 2010, the bond purchase agreement was amended three times, and Gordon Paving borrowed an additional $1 million through a second bond purchase agreement. The second bond purchase agreement was secured by the same real and personal property as the first bond purchase agreement.

On June 28, 2012, AgStar filed suit, claiming that Gordon Paving had defaulted on the bond purchase agreements. AgStar sought judicial foreclosure and sale of the real and personal property collateral. On June 19, 2013, the district court entered judgment in favor of AgStar in the foreclosure action and ordered the sale of the collateral. The district court determined that Gordon Paving owed AgStar $9,387,069.17. The district court later determined that AgStar was entitled to a prepayment penalty of $366,648 under the bond agreements.[1] On September 30, 2013, the district court awarded AgStar $59,623.51 in attorney fees and costs incurred in connection with the foreclosure action. The district court calculated the interest accrued on the debt through November 21, 2013, as $209,280.21.

On November 21, 2013, AgStar purchased all of the real property collateral at a foreclosure sale by way of five separate credit bids totaling $7,200,000. On February 12, 2014, AgStar moved for entry of a deficiency judgment of $2,455,972.89, which represented the

---

[1] The record does not contain an order regarding the prepayment penalty and the judgment of foreclosure was not subsequently amended. The district court's memorandum opinion of August 28, 2014, recited its earlier determination of AgStar's entitlement to a prepayment penalty in its description of the procedural posture of the case.

difference between the amount of the unpaid judgment at the time of the sale and AgStar's credit bids.

On August 28, 2014, the district court issued a memorandum opinion denying AgStar's motion for deficiency judgment. The district court concluded that AgStar had not proven that the reasonable value of the foreclosed properties was less than the balance owed under the foreclosure decree, explaining that the reasonable value of the foreclosed properties "totaled at least $11,710,105 at the time of the entry of the decree and that the amount owed by that decree, if prepayment penalty and attorney fees are included, was at most $9,813,340."

On September 4, 2014, AgStar moved the district court for an order directing Gordon Paving to transfer the titles of various vehicles that Gordon Paving had pledged as collateral for the bond obligations to AgStar and for a comfort order allowing AgStar to sell the personal property collateral at auction. On September 15, 2014, Gordon Paving submitted a memorandum in opposition to AgStar's motion. Gordon Paving argued that because the district court had already determined that AgStar had received real property worth more than the debt owed under the foreclosure judgment and denied AgStar a deficiency judgment, AgStar was estopped from selling any further collateral because Gordon Paving's debt was extinguished.

The district court held a hearing on AgStar's motion on September 18, 2014. The district court held that AgStar was entitled to sell the personal property pledged as collateral to secure Gordon Paving's indebtedness despite having obtained the real property for credit bids of $4.5 million less than market value.

On September 11, 2014, Gordon Paving moved for an award of attorney fees, asserting that, as the prevailing party in the deficiency proceeding, it was entitled to attorney fees under Idaho Code section 12-120(3). On September 24, 2014, AgStar filed a motion to disallow Gordon Paving's request for attorney fees. AgStar argued that provisions of the bond purchase agreements prohibited Gordon Paving from receiving attorney fees, that Gordon Paving was not the prevailing party, and that Idaho Code section 12-120(3) was not applicable because a deficiency proceeding is a post-judgment proceeding governed by Idaho Code section 12-120(5). Following a hearing on November 10, 2014, the district court found that Idaho Code section 12-120(3) entitled Gordon Paving to an award of attorney fees it had incurred in the deficiency proceedings. On November 18, 2014, the district court entered a judgment in favor of Gordon Paving against AgStar for $25,277.17.

3

After receiving the district court's judgment in its favor, on November 21, 2014, Gordon Paving attempted to garnish royalties that TKT Excavation & Trucking owed to AgStar for gravel extraction. On December 8, 2014, AgStar filed a claim of exemption in which it asserted that the funds were "proceeds of collateral subject to AgStar's security interest." On February 9, 2015, the district court held a hearing on the issue and held that AgStar was entitled to the claimed exemption.

On November 21, 2014, AgStar sought an award of post-judgment attorney fees and costs incurred from June 19, 2013 through November 22, 2014, and for the district court to amend the Judgment and Decree of Foreclosure accordingly. On December 5, 2014, Gordon Paving objected to AgStar's request. Gordon Paving argued that AgStar's petition was untimely and that the claimed fees were unreasonable. On February 9, 2015, the district court held a hearing on the issue. The district court concluded that attorney fees were appropriate under Idaho Code section 12-120(5) and granted in part and denied in part AgStar's petition for post-judgment fees.

AgStar timely appealed from the district court's award of attorney fees to Gordon Paving in connection with the deficiency proceeding. Gordon Paving timely cross-appealed from the district court's order allowing AgStar to sell the personal property collateral, the district court's grant of post-judgment attorney fees and costs to AgStar, and the district court's order upholding AgStar's claim of exemption.

## II.
## STANDARD OF REVIEW

"The district court's decision to award attorney fees is reviewed under the abuse of discretion standard." *Stout v. Key Training Corp.*, 144 Idaho 195, 196, 158 P.3d 971, 972 (2007). "However, when an award of attorney fees depends on the interpretation of a statute, the standard of review for statutory interpretation applies." *Id.* "This Court exercises free review over questions of law." *Fields v. State*, 149 Idaho 399, 400, 234 P.3d 723, 724 (2010). "The interpretation of a statute is a question of law over which this Court exercises free review." *Saint Alphonsus Reg'l Med. Ctr. v. Gooding Cnty.*, 159 Idaho 84, 86, 356 P.3d 377, 379 (2015).

## III.
## ANALYSIS

AgStar argues that a deficiency proceeding is a post-judgment proceeding subject to Idaho Code section 12-120(5) and not a separate action from the initial foreclosure proceeding;

4

therefore, Idaho Code section 12-120(3) does not apply. Alternatively, AgStar contends that even if Idaho Code section 12-120(3) is applicable, the provisions of the underlying bond agreement prohibit Gordon Paving from collecting attorney fees. Gordon Paving's cross-appeal claims that: (1) the district court erred by permitting AgStar to take possession and sell personal property collateral to satisfy the foreclosure judgment after the district court had denied AgStar's request for a deficiency judgment; (2) the district court erred in awarding AgStar post-judgment attorney fees because AgStar's petition was untimely; and, (3) the district court erred when it upheld AgStar's claim of exemption. We address these issues in turn.

A.     **The district court abused its discretion when it awarded attorney fees under Idaho Code Section 12-120(3) without first determining the prevailing party in the entire action.**

On November 10, 2014, the district court held that Gordon Paving was entitled to attorney fees under Idaho Code section 12-120(3) as the prevailing party in the deficiency proceeding. The district court reasoned:

> This is a unique issue. The deficiency part of this case was clearly separately – separate from the initial foreclosure action. Just as much as AgStar has certainly prevailed on their claim for obtaining a judgment and [I] awarded some, I don't remember what it was, 60, $70,000 in fees, I think this is a separate and distinct part of this case, and it is within my discretion to treat it as such, just as much as I would treat it like a counterclaim. I realize it's not a counterclaim. It is independent, and under the unique circumstances of this case [I] consider the defendants the prevailing party, and therefore, because this is clearly a commercial transaction under 12-120, subsection 3, they are entitled to award of fees and costs for having defended this case.

AgStar argues that Idaho Code section 12-120(5) should apply to deficiency proceedings. Alternatively, AgStar contends that a deficiency judgment hearing is merely a supplemental proceeding in the foreclosure action and that Idaho's "one action rule" establishes that a deficiency motion is not a separate "action" for purposes of Idaho Code section 12-120(3). Finally, AgStar argues that provisions of the bond agreements between AgStar and Gordon Paving prohibit awarding attorney fees to Gordon Paving.

### i. Idaho Code section 12-120(5) is not applicable to deficiency proceedings.

We do not find AgStar's contention that Idaho Code section 12-120(5) applies to deficiency proceedings to be persuasive. Idaho Code Section 12-120(5) provides: "In all instances where a party is entitled to reasonable attorney's fees and costs under subsection (1), (2), (3) or (4) of this section, such party shall also be entitled to reasonable postjudgment

attorney's fees and costs incurred in *attempting to collect on the judgment*." I.C. § 12-120(5) (emphasis added). In a deficiency proceeding, the creditor is not attempting to collect on a foreclosure judgment; rather, a motion for a deficiency judgment is a request for the court to recalculate the amount of debt owed based on the original foreclosure judgment less any amount realized by the disposition of collateral. If the creditor is successful in the deficiency proceeding, the creditor may then attempt to collect the deficiency amount from other non-exempt, non-collateral property owned by the debtor. Because a deficiency proceeding is not an attempt to collect on the judgment, Idaho Code section 12-120(5) is not applicable.

### ii. A deficiency proceeding is not a separate action.

Idaho Code section 12-120(3) provides:

> In any *civil action* to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs.

I.C. § 12-120(3) (emphasis added). Idaho Rule of Civil Procedure 3(a) explains: "A civil action is commenced by the filing of a complaint, petition or application with the court." I.R.C.P. 3(a). Idaho's "one action rule," Idaho Code section 6-101(1) provides:

> There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real estate which action must be in accordance with the provisions of this chapter. In such action the court may, by its judgment, direct a sale of the incumbered property (or so much thereof as may be necessary) and the application of the proceeds of the sale to the payment of the costs of the court and the expenses of the sale, and the amount due to the plaintiff; and sales of real estate under judgments of foreclosure of mortgages and liens are subject to redemption as in the case of sales under execution; (and if it appear from the sheriff's return that the proceeds are insufficient, and a balance still remains due, judgment can then be docketed for such balance against the defendant or defendants personally liable for the debt), and it becomes a lien on the real estate of such judgment debtor, as in other cases on which execution may be issued.

I.C. § 6-101. Idaho Code section 6-101(3) provides: "As used in this section, an 'action' does not include any of the following acts or proceedings: (f) For the exercise of any right or remedy authorized by: (i) The Idaho uniform commercial code, title 28, Idaho Code, except the securing of a judgment on the secured debt, including a deficiency judgment, in a court in Idaho . . . ." I.C. § 6-101(3)(f)(i). We recognize that a deficiency proceeding is separated by time from the

proceedings to obtain judicial foreclosure; however, Idaho Code section 6-101(3)(f)(i) makes it clear that it is not deemed a separate action.

The district court specifically retained jurisdiction in the foreclosure action "for the purpose of making such further orders as may be necessary or desirable." AgStar's request for deficiency judgment was made by way of its Motion for Entry of a Deficiency Judgment,[2] not by way of filing a complaint, petition, or application with the court. It was brought in the same case under the same case number as the original foreclosure action.

We conclude that the district court erred by applying an erroneous legal standard when it determined that the deficiency proceeding was a separate civil action under Idaho Code section 12-120(3) and awarded Gordon Paving attorney fees as the prevailing party solely based on the deficiency proceeding and without considering the entirety of the action.[3] *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 719, 117 P.3d 130, 133 (2005) ("the prevailing party question is examined and determined from an overall view, not a claim-by-claim analysis"). We therefore vacate the judgment awarding attorney fees to Gordon Paving and remand for the district court to determine which party, if any, prevailed in this action.

### iii. The district court did not err when it held the bond agreement did not bar Gordon Paving from being awarded attorney fees.

Although we have vacated the award of attorney fees, we address AgStar's contention that the bond agreement bars an award of attorney fees to Gordon Paving, as that issue may arise on remand. The district court held that the bond agreement did not bar the award of attorney fees to Gordon Paving following the deficiency proceeding. The bond purchase agreement states:

> Upon the occurrence of an Event of Default . . . Investor may pursue all rights and remedies available under each or any of the Bond Security Documents, as well as any rights and remedies at law, or in equity, which it deems advisable for the protection of its interests to collect and enforce payment, and such rights and remedies shall be cumulative, The Issuer shall pay all expenses, court costs and reasonable attorneys' fees incurred in connection with or arising out of any default hereunder.

The district court concluded:

---

[2] The motion is not contained within the record. The register of actions reflects the title of the document. Likewise, the district court's decision on the subject was captioned "Memorandum Opinion re Plaintiff's Motion for Deficiency Judgment."

[3] Although not a subject of this appeal, we note that the district court awarded attorney fees and costs to AgStar on September 30, 2013. The basis for the award is unclear from the record. If the award was made under Idaho Code section 12-120(3), it would likewise have been made in error.

[The] reason that I find that it does not apply is that it would be, in my view, unconscionable to have a clause that allows a prevailing party in a case – I'll look into the prevailing party analysis here in a minute – a prevailing party have to pay their own fees. Then the other side, as a nonprevailing party, could collect their fees. That is the interpretation that has sort of been given to this clause, and I just don't accept that, and I'm not going to enforce that.

AgStar contends that the plain language of the bond agreement prohibits the award of attorney fees to Gordon Paving. AgStar argues that a contract that contains an attorney fee provision establishes the right to such fee, and if a contract limits or disallows an award of fees, Idaho Code section 12-120 cannot override that provision. AgStar points to the Idaho Court of Appeals' decision in *Chittenden & Eastman Co.*, wherein the court upheld a contract provision limiting the amount of attorney fees to 15% of the amount of the claim. *Chittenden & Eastman Co. v. Leasure*, 116 Idaho 981, 982, 783 P.2d 320, 321 (Ct. App. 1989). Further, AgStar cites to *Moore v. Omnicare, Inc.*, wherein this Court honored a contract provision that required each party to bear its own attorney fees. *Moore v. Omnicare, Inc.*, 141 Idaho 809, 818, 118 P.3d 141, 150 (2005). AgStar concludes that in the present case "Gordon Paving has contracted away all statutory rights to an award of attorney fees and costs."

Although we disagree with the district court's view that the agreement was unconscionable, we agree with its ultimate conclusion. This Court has consistently held that freedom of contract is "a fundamental concept underlying the law of contracts and is an essential element of the free enterprise system." *Zenner v. Holcomb*, 147 Idaho 444, 452, 210 P.3d 552, 560 (2009) (quoting *Steiner Corp. v. American Dist. Telegraph*, 106 Idaho 787, 791, 683 P.2d 435, 439 (1984)). Thus, we have indicated that we will give effect to parties' agreements that are inconsistent with statutory provisions relating to awards of attorney fees.

In *Farm Credit Bank of Spokane v. Wissel*, 122 Idaho 565, 836 P.2d 511 (1992), the district court denied both parties' requests for attorney fees, holding there was no prevailing party in the action. *Id.* at 567, 836 P.2d at 513 (1992). The district court did not consider the contractual attorney fee provision contained in the lease. *Id.* The lease provided: "In the event that the Lessor does find it necessary to bring suit or action under the terms of this lease, then the Lessee hereby agrees to pay the Lessor's reasonable attorney fees and costs of suit incurred in said suit or action." *Id.* at 568, 836 P.2d at 514. Over a vigorous dissent from Justice Johnson, this Court held that the district court correctly concluded that there was no prevailing party; however, we vacated the judgment of the district court and remanded for a determination of the

appellants' entitlement to attorney fees and costs pursuant to the conditions contained within the provision of the lease. *Id.* at 569, 836 P.2d at 515.

Two years later, in *Post v. Murphy*, 125 Idaho 473, 873 P.2d 118 (1994), this Court again considered the issue of awarding contractual attorney fees to a non-prevailing party and reached the same conclusion as the majority in *Farm Credit*. In *Post*, a restrictive covenant[4] provided: "In the event that the Grantors shall employ legal counsel in connection with or to enforce these covenants and restrictions, then the persons with respect to which such employment occurs shall pay all costs incurred, including reasonable attorneys' fees." *Id.* at 475, 873 P.2d at 120. This Court held: "Under *Farm Credit*, unless the contractual attorney fees provision specifically requires such, no 'prevailing party' requirement will be imposed on a contractual right to recover fees." *Id.* at 477, 873 P.2d at 122.

We are not asked, however, to decide whether AgStar is entitled to an award of attorney fees incurred in connection with the deficiency proceeding. Instead, the pertinent inquiry is whether the bond agreement prohibits an award of attorney fees to Gordon Paving. Because the bond agreement is silent as to this issue, we conclude that it does not. For that reason, we hold that the district court did not err when it concluded that the bond agreement did not bar the award of attorney fees to Gordon Paving.

**B.      The district court erred when it allowed AgStar to continue to sell the personal property collateral to satisfy the foreclosure judgment.**

On September 18, 2014, the district court determined that AgStar was entitled to sell personal property collateral to satisfy Gordon Paving's debt, despite its earlier determination that AgStar was not entitled to a deficiency judgment.[5] The district court concluded that "a creditor has the right to exhaust all of [its] collateral, irrespective of market values . . . until the judgment is satisfied."

Gordon Paving contends that the district court erred by allowing AgStar to continue to sell personal property collateral after the district court denied AgStar's motion for deficiency judgment. Gordon Paving contends that the debt was satisfied in the foreclosure. AgStar responds that the plain language of Idaho's anti-deficiency statute only bars recovery of a

---

[4] "This Court applies contract principles to interpret restrictive covenants." *Adams v. Kimberley One Townhouse Owner's Ass'n, Inc.*, 158 Idaho 770, 773, 352 P.3d 492, 495 (2015) (citing *Sky Canyon Props. v. Golf Club at Black Rock, LLC*, 155 Idaho 604, 606, 315 P.3d 792, 794 (2013)).

[5] There does not appear to be any dispute that the value of the personal property is much less than the approximately $2.5 million difference between Gordon Paving's debt under the bond agreements and the $7,200,000 in credit bids AgStar made to purchase the real property collateral.

9

deficiency judgment greater than the difference between the debt and the fair market value of the property sold; it does not bar a secured creditor from liquidating collateral in a serial fashion until the debt is fully satisfied.

As we previously noted, AgStar foreclosed its mortgage against Gordon Paving's real property and purchased all of the property at a foreclosure sale on November 21, 2013, for credit bids totaling $7,200,000. Then, AgStar sought a deficiency judgment of $2,455,972.89. Following a hotly contested proceeding where both parties submitted expert testimony regarding the reasonable value of the real estate, the district court entered its memorandum decision in which the court meticulously sorted through the evidence to determine whether AgStar was entitled to additional monies. The district court concluded:

> In summary, the Court finds that the reasonable values of the foreclosed properties totaled <u>at least</u> $11,710,105 at the time of entry of the decree[6] and that the amount owed by that decree, if prepayment penalty and attorney fees are included, was <u>at most</u> $9,813,340. The burden of proving a deficiency lies with the plaintiff. Overall, Agstar has not proven by a preponderance of the evidence that the reasonable values of the foreclosed properties totaled less than the balance owed as determined by the decree. Accordingly, AgStar's motion for deficiency judgment is DENIED.

(Emphasis added). Thus, the district court determined that by virtue of the foreclosure on the real property, AgStar obtained title to real property worth, at the least, $1,896,765 more than the amount Gordon Paving owed to AgStar. Stated another way, the reasonable value of the foreclosed properties exceeded AgStar's credit bids by at least $4,510,105. AgStar did not appeal the district court's valuations.

The question before this Court is whether, in spite of the surplus value received by AgStar in the real property foreclosure, AgStar was entitled to obtain additional recovery by realizing upon its personal property collateral. We hold that Gordon Paving's indebtedness to AgStar had been fully satisfied and it was not entitled to seek additional monies from Gordon Paving.

This case does not present a situation where entirely separate secured transactions were entered into between the parties. There was one transaction which was initiated when the parties

---

[6] The district court appears to have misspoken here with regard to actual valuation dates. The court's memorandum decision indicates that most of the property valuations were made as of the date of the foreclosure sale, despite the reference here to the time of the decree. The court did observe that Idaho Code section 6-108 calls for the reasonable value to be stated in the foreclosure decree. However, neither party has raised an issue in this appeal regarding the proper time of the valuation of the property parcels so there is no need to address the matter.

10

entered into a bond purchase agreement on December 10, 2007. That agreement provided for an indebtedness in the initial amount of $9 million, which was subsequently increased by $1 million pursuant to a second agreement. Both agreements called for securing the indebtedness by a mortgage on Gordon Paving's real property, a security interest in Gordon Paving's personal property, and personal guarantees from Gordon Paving's principals. From the record, it appears that the real property was Gordon Paving's principal asset and the primary source of security for the debt. There was a single debt with three sources of security for payment.

There is scant authority dealing with this fact situation. However, the Court can look to closely related fact situations to draw some conclusions. It should first be said that secured creditors have an undoubted right to recover full recompense from those to whom they have loaned money. However, both the Idaho Legislature and this Court have also been cognizant of the rights of debtors and reluctant to allow creditors to obtain excessive recompense.

It has been contended that the following comment made by Judge Burnett in *Quintana v. Anthony*, 109 Idaho 977, 980, 712 P.2d 678, 681 (Ct. App. 1985) precludes relief for Gordon Paving:

> Idaho Code § 6-101 was supplemented by I.C. § 6-108, the deficiency limitation statute, during the Great Depression. The statutory scheme responded to a haunting spectre of mortgage debtors defaulting on loans, losing their property in distress sales and encountering massive deficiencies. These statutes have protected debtors by sheltering unmortgaged property from potential execution until mortgaged property has been sold in a judicially supervised foreclosure.

It is unclear how this comment supports AgStar's case. It merely states that a creditor who holds a debt secured by a mortgage must proceed against the mortgaged real property before resorting to collection proceedings against unmortgaged property. That is true but it is rather beside the point here because, if the creditor proceeds first against the mortgaged real property and the debt is fully satisfied in the foreclosure proceeding, the creditor is precluded from pursuing additional recovery against either secured or unsecured property.

The case does demonstrate how the courts have employed equity in resolving issues like that presently before this Court. It should be noted that the court in *Quintana* was not dealing with a real estate mortgage. Rather, the question was whether real property subject to a vendor's lien could be foreclosed upon in the same manner as a mortgage, specifically whether the mortgagee could execute on property not subject to the vendor's lien before foreclosing the lien on the real property. *Id.* at 979, 712 P.2d at 680. The court recognized that:

11

> A vendor's lien, like a mortgage, is a security device. But unlike a mortgage, which arises from agreement of the parties, a vendor's lien arises by operation of law, unless waived. It is a codified creature of equity. . . . Accordingly, the vendor's lien is "not a specific and absolute charge on the realty but a mere equitable right to resort to it [i.e. the property] on failure of payment by the vendee."

*Id.* at 980, 712 P.2d at 681. The court continued, "[n]evertheless, the legislative policies underlying our mortgage foreclosure statutes should guide the court's exercise of its equitable powers when enforcing a vendor's lien." *Id.* Judge Burnett's comment followed this observation, and the comment was followed by the court's finding that the protections provided to mortgagors by Sections 6-101 and 6-108 should apply equally in the situation of vendor's liens—"[i]n our view, parallel protections are appropriate and may be provided in equity, where sellers of real property assert the existence of vendors' liens." *Id.* Thus, while the mortgage statutes do not apply to the situation of vendor's liens, the courts have the equitable power to provide those protections and the court did so in *Quintana*.

This Court had the opportunity to discuss the legislative purpose of Idaho Code section 6-108 in *Eastern Idaho Production Credit Assn. v. Placerton, Inc.*, 100 Idaho 863, 606 P.2d 967 (1980). In that case, we observed that the statute "was added by the Idaho legislature in 1933 to afford greater protection to the large number of debtors facing the prospect of defaulting on their mortgage debts." *Id.* at 869, 606 P.2d at 973. We stated that "[t]he legislative purpose behind this type of statute is explained by Professor Osborne:"[7]

> The mortgagee is not entitled to recover more than the full amount of his mortgage debt. When the mortgagee buys in the property at less than its actual value and gets such a judgment [for the deficiency] he is getting something more than a full recovery and getting it at the expense of the mortgagor. His profit is the difference between the actual value of the property and the price at which it is bid in. Such a profit usually accrues even in ordinary times, and in a depression it becomes so great as to be shocking. Taking into account the difficulties of boosting the amount that the property will fetch so as to close the gap, it is not difficult to understand why legislatures in the thirties turned to a new technique. Instead of measures attempting to insure an adequate sale price of the property, the price obtained through the sheriff's sale was abandoned as a test of the deficiency. For it was substituted the "fair value," or some similar standard, of the premises.

*Id.* at 869–70, 606 P.2d at 973–74. Although the Osborne quote did not specifically address the situation where the mortgage indebtedness is also secured by personal property, it said that the

---

[7] G. Osborne, Handbook on the Law of Mortgages § 335 (2d ed. 1970).

mortgage creditor "is not entitled to recover more than the full amount of his mortgage debt." In this case, the full amount of the mortgage debt, which is the same debt secured by the security interest, was determined by the district court to be, at most, $9,813,340. The reasonable value of the foreclosed real property was determined, after a contested hearing, to be at least $11,710,105. To allow AgStar to recover, at the least, $1,896,765 more than the full amount of the mortgage debt, would certainly appear to be contrary to the Osborne quote approved by the *Placerton* Court.

In a decision issued by the Court of Appeals in 1986, *First Sec. Bank of Idaho v. Stauffer*, 112 Idaho 133, 730 P.2d 1053 (Ct. App. 1986), the court was dealing with a situation where First Security's loan to the Stauffers was secured both by a mortgage on their real property and a security interest in their personal property. The court, speaking through Judge Walters, reiterated Judge Burnett's comment and then said:

> I.C. § 28-9-501(4) provides for an action solely upon the personal property security agreement. First Security admits that it must give "credit" for the fair market value of the real property pursuant to I.C. § 6-108 as interpreted in *Eastern Idaho Production Credit, supra. See also Ferry v. Fisk¸* 54 Idaho Cal.App. 763, 202 P. 964 (1921) (voluntary credit may extinguish debt).

*Id.* at 138, 730 P.2d at 1058. This seems to assume that a defaulting debtor is entitled to a credit against a debt secured both by real and personal property in the amount of the fair market value of real property, as determined by the court in a deficiency proceeding.

The Court provided some guidance regarding the recovery of a deficiency on personal property collateral in *Mack Fin. Corp. v. Scott*, 100 Idaho 889, 606 P.2d 993 (1980). Mack Financial sold a number of trucks to Scott's company on a group of conditional sales contracts. *Id.* at 890, 606 P.2d at 994. When Scott's company defaulted, Scott surrendered the trucks to Mack in February 1970. The trucks remained at Mack's property until they were sold at public auction nearly two years later. Scott owed Mack $127,600 but only $44,700 was received at the auction, leaving a deficiency somewhat in excess of $85,000. Scott contended that Mack had not repossessed and sold the trucks in a commercially reasonable manner and, therefore, was not entitled to a deficiency judgment. *Id.* The district court

> found that Mack's unexcused delay of nearly two years between its repossession of the collateral and its sale of the collateral at public auction resulted in a reduced price as a consequence of depreciation and constituted a commercially

13

unreasonable disposition of the collateral in violation of the requirements of I.C. § 28-9-504(3).[8]

*Id*. at 893, 606 P.2d at 997. Therefore, the district court denied Mack a deficiency judgment, which this Court affirmed. *Id.* While this is fairly routine application of Idaho law, the Court's next holding is much more pertinent to the current discussion. Scott had also given his personal guarantee of the indebtedness. The question became whether Mack could pursue its personal guarantee against Scott even though it had lost the right to seek a deficiency under the security interest. The Court stated the question:

> The question to be decided is whether an unconditional guarantor may avail himself of the defense of the commercial unreasonableness of the creditor's disposition of collateral securing the obligation in an action by the creditor against the guarantor. The courts which have addressed the question have held that where the actions of the creditor impair the value of the collateral in its possession which secures an obligation guaranteed by a guarantor, either absolute or conditional, the guarantor will be discharged to the extent of the loss occasioned by the creditor.

*Id.* at 894, 606 P.2d at 998. The Court concluded:

> We hold . . . that the justified denial of a deficiency judgment against the principal obligor discharged the guarantor from liability for any such deficiency. Under these circumstances Mack is precluded from recovering under the guaranties whether they are characterized as absolute or conditional.

*Id.* at 896, 606 P.2d at 1000. The fact situation here is obviously different but what is similar is that when AgStar sought a deficiency judgment in a contested proceeding that resulted in a final determination that the reasonable value of the foreclosed property greatly exceeded the outstanding indebtedness, it lost any right to claim any further deficiency and the ability to seek further recovery under the personal guarantee. In *Mack*, the Court was dealing with the same debt and two sources of security. In this case, we are dealing with the same debt and three sources of security. When a creditor is fully satisfied by one source, it may not pursue another.

Another important aspect of the *Mack* case is that the Court did not rely upon any provision of the UCC or any other statute to determine that Mack was not entitled to enforce its guarantee. While the Court denied the deficiency judgment based upon the UCC, the denial of recovery of additional funds under the guarantee was solely based on the equitable powers of the Court and not upon any statute. In this case, where the district court denied a deficiency because

---

[8] Section 28-9-504(3) has since been replaced, but current provisions of the UCC provide basically the same remedy where collateral is not disposed of in a commercially reasonable manner. *See* I.C. §§ 28-9-625 to 628.

14

AgStar received the full value of Gordon Paving's debt plus almost $2,000,000 in the foreclosure, a determination that AgStar did not appeal, it would be incorrect to hold that AgStar's debt had not been fully satisfied.

Another case that provides some enlightenment is *Portland Cattle Loan Co. v. Biehl*, 42 Idaho 39, 245 P. 88 (1925), where this Court stated upon a rehearing:

> The complaint originally stated a cause of action in claim and delivery, but, by the supplemental complaint, it was alleged by the mortgagee that, subsequent to the institution of the action in claim and delivery, it had foreclosed its mortgage on a portion of the mortgaged chattels and had taken a deficiency judgment for the entire balance of its secured debt. While it would seem that the mortgagee was not entitled to a deficiency judgment against the mortgagor until it had subjected all the mortgaged property to the payment of the mortgage debt, the fact remains that judgment was actually made and entered for the deficiency.
>
> The judgment left nothing to be adjudicated, and constituted a determination that the mortgage security had been exhausted. The deficiency judgment determined the rights of the mortgagee under the mortgage, and, while the judgment stands, appellant cannot go behind it and claim that, under the mortgage, it is entitled to the possession of the remainder of the mortgaged property. 5 Cal. Jur. 107; Ex parte Braun, 196 P. 499, 51 Cal. App. 202. The deficiency judgment for the sum remaining due, after crediting the sum received from a sale of a portion of the mortgaged chattels, deprives appellant of any right to the possession of any of the chattels covered by the mortgage and not disposed of at foreclosure sale.

*Id.* at 47–48, 245 P. at 90. At that time the single-action statute applied both to real and personal property. The Court noted that "C.S. § 6949, provides that: 'There can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property.'" *Id.* at 44, 245 P. at 89.[9] Nevertheless, this case is of interest because it holds that where a creditor forecloses against a portion of its security and obtains a deficiency judgment, it cannot then seek to recover against the additional security that was not sought in the first instance. Again, this is not the precise situation currently before the Court, but it gives an indication of how the Court has sought to provide a certain measure of equitable protection to debtors in the past.

Another somewhat related instance is where real property is sold on a title-retaining contract. Such a contract generally provides for an executed deed to the property to be placed in

---

[9] This language was codified in Idaho Code section 6-101 and remained in effect until 1967 when "or personal property" was stricken to reflect the fact that the Legislature had adopted the UCC to apply to personal property. 1967 Sess. Laws, ch. 272, § 1, pp. 745, 747.

15

escrow and for the escrowholder to furnish the deed to the contract buyer upon payment of the purchase price. In the event of a default, the contract generally provides that the escrow will be closed and the deed returned to the contract seller, who would then retake possession of the property. In those instances where a substantial part of the contract price has been paid, defaulting buyers justifiable complain that they have lost both the property and a good portion of the purchase price.

The courts have been attentive to the unfortunate plight of such contract buyers and adapted the doctrine of unjust enrichment to this situation to protect a defaulting buyer's interest. This remedy was explained by the Court of Appeals in *Hines v. Wells*, 120 Idaho 177, 814 P.2d 437 (Ct. App. 1991), as follows:

> Where a forfeiture occurs under an installment land sale contract—the seller retaining both the payments and the property—the defaulting purchaser may seek restitution for that part of the forfeiture deemed to constitute an "unconscionable penalty." . . . Central to the equitable remedy of restitution is the principle against unjust enrichment. . . . In order to establish his or her claim to restitution, the purchaser must show that the value of the property reverting to the seller, together with payments made under the contract, is disproportionate to the seller's actual damages. . . . The measure of "actual damages" allowed the vendor is, primarily, the difference between the contract price and the value of the property at the time of breach.

*Id.* at 179, 814 P.2d at 439 (internal citations omitted). In other words, the seller of the property was not entitled to recover more than the actual amount of damages sustained in this type of secured transaction. Again, this conclusion is not a result of any statutory protection for debtors but, rather, an application of equitable principles by the courts.

The foregoing cases demonstrate that equitable principles are the key to resolving the question of whether or not a deficiency is appropriate upon foreclosure of various types of security interests. The hallmark of these cases is that they arrived at a reasonable resolution after balancing the equities between the creditor and debtor. In the situation of a mortgage foreclosure, the Legislature has dictated that a court consider the "reasonable value" of the property at issue in determining whether or not to grant a deficiency judgment. I.C. § 6-108. It should be noted that the Legislature adopted this section on an emergency basis during the depth of the Great Depression in 1933 as a means of protecting mortgagors. *See* 1933 Idaho Sess. Laws, ch. 150, P. 229. Since that time, the courts have often conflated "reasonable value" with "market value." However, the Legislature obviously knew there was a difference. Real property values in the

Depression were severely depressed, resulting in mortgagors "encountering massive deficiencies," as noted by Judge Burnett in *Quintana* and by the *Placerton* Court's Osborne quote. At the time of the enactment of Section 6-108, it is highly likely that the reasonable value of real property would substantially exceed the market value. A reasonable value would take into consideration the market value of the property, but also factors such as the reasonableness of the creditor's actions in setting up and conducting the sale, the prevailing market conditions in the economy, whether a credit bid was shockingly low, and so on.

On the other hand, a reasonable value provides substantial protection for creditors in normal times. A forced judicial sale that is not based upon market conditions will often produce a lesser purchase price than the appraised market value. Except where the creditor is the purchaser at a forced judicial sale, the creditor should not be stuck with a market value figure when seeking a deficiency judgment. The creditor should be able to show that the purchase price paid by a third party at the sale was less, even substantially less, than would have been realized in an arm's-length market value transaction. The reasonable value language in Section 6-108 can make adjustments for sale conditions and provide protection for both creditors and debtors depending on the market conditions that prevail. A reasonable value determination allows the court to consider these matters, make a reasoned determination of the value the creditor actually received by virtue of its credit bid, and make an equitable decision.

Real and personal property mortgages were foreclosed under the same statute until adoption of the UCC in 1967. However, under the UCC the same basic principles continued to apply to a creditor's effort to obtain a deficiency after the disposition of personal property subject to a security interest. Presently, no deficiency is available if the creditor fails to dispose of the personal property in a commercially reasonable manner. This is a continuation of the equitable treatment of the issue that stems from our earlier history. Again, it balances the equities between the parties in coming to a reasonable resolution.

Where a secured creditor who holds more than one source of security for the same debt seeks a deficiency judgment after having foreclosed on mortgaged real property and obtained title to such real property by credit bid in the foreclosure sale, the Court should utilize its equity powers to consider the debt satisfied where the reasonable value of the real property is litigated

17

and determined to be substantially greater than the debt.[10] It must be remembered that where the creditor acquires the property through a credit bid, the creditor has absolutely no incentive to offer anywhere near a market value price. A credit bid in these circumstances is an artificial price that is often designed to allow the creditor to then pursue additional value through other sources, such as guarantees and security interests in personal property. Here, as noted by the district court, "AgStar's credit bids were based upon an appraisal report completed by Brent Stanger who was employed by AgStar." In the deficiency proceeding, the district court considered Stanger's valuations and found them to be much too low. For example, the court noted that Stanger had valued the Twin Falls County gravel pits for Gordon Paving in 2005 and then valued them for AgStar in 2012, about a year before entry of the foreclosure decree. According to the court:

> The Court is not convinced that the value of these four pits has plummeted from the $7,000,000 value attributed to them by Stanger in 2005 to a value of $4,240,000 based upon his revised 2012 appraisal. The Court rejects Mr. Stanger's opinion expressed in this trial as to the value of these pits. The Court finds the reasonable value of the Twin Falls pits at the time of sale is **at least** $7,000,000 as it was in 2005.

It is inequitable to allow a mortgagee to acquire foreclosed real property with an unrealistically low credit bid and then use that sale price as a credit against the overall debt so as to permit additional recovery, even when the court has determined in a contested proceeding that the creditor realized substantially more than the total amount of the debt at the foreclosure sale. The reasonable value of the real property, as determined in a final order in the contested deficiency proceeding, should be credited against the debt to reduce or eliminate it. When a debt has been fully satisfied by one source of security, whether in monetary recovery or in kind recovery of property, the debt should be considered extinguished and the creditor should be unable to seek additional recovery. If a creditor is able to use an unrealistically low credit bid to determine how much should be credited against the overall debt, there is nothing to stop the creditor from putting in a low-ball bid so as to collect a windfall.

AgStar had the option of going directly against the guarantors to recover the entire amount of the indebtedness. The guarantee contract allowed AgStar to do that. However, had it done so and received full payment from the guarantors, it would not have been allowed to proceed against the real and personal property. The debt would have been fully paid.

---

[10] This would not apply where the purchaser at the foreclosure sale is not the secured creditor or an affiliated buyer, as there is less incentive and opportunity for overreaching.

18

In this instance, AgStar bid the property in at $7,200,000 and then sought a deficiency. It was not forced to do so. It chose to do so. AgStar placed at issue the reasonable value of the property and had the obligation to show that the amount it paid was reasonable. It was unable to do so. Despite the opportunity to justify the credit bids it submitted, it turns out that it paid $4,510,105 less than what the district court determined to be the reasonable value of the property. AgStar took a chance and received a determination that Gordon Paving's obligation had been fully paid. It did not appeal the court's determination of the reasonable value of the property and is collaterally estopped[11] from claiming that the property was worth less than the value determined by the district court. Thus, the adjudicated reasonable value should be credited against Gordon Paving's indebtedness as of the time of the execution sale. That would effectively extinguish the debt, precluding AgStar from pursuing additional payments from any source.

This outcome is not based upon any direct application of Idaho Code section 6-108. While it is true that Section 6-108 has the effect of limiting the amount of any deficiency, it also has the incidental purpose of assisting courts in determining whether a creditor has submitted a reasonable credit bid for the property, i.e. one bearing a reasonable relationship to the actual value of the property, as well as determining how much should be credited to the debtor's outstanding obligation. Where a trial court determines the reasonable value of the real property and such decision becomes final, that is the amount that is to be credited against the debt.

During a contested deficiency proceeding, both sides can address all aspects of the sale in determining the reasonable value of the property. The hotly contested deficiency proceeding in this case allowed both parties to fully explore valuation issues, as each side brought in multiple experts to address the pertinent issues playing into the appraisal figures they gave.

In light of the foregoing, we hold that where a creditor has several sources of security for a single debt, the creditor must proceed to recover in a reasonable manner and that, while a creditor is entitled to full recompense, it is not entitled to place undue financial burdens on its debtor. In this case, AgStar took a chance when it sought a deficiency judgment against Gordon Paving even though it had come out almost two million dollars ahead by virtue of the real

---

[11] It appears that the five elements of collateral estoppel, as outlined in *Berkshire Invs. LLC v. Taylor*, 153 Idaho 73, 81, 278 P.3d 943, 951 (2012), are present here—(1) AgStar had a full and fair opportunity to litigate the reasonable value of the foreclosed real property; (2) that same issue is presented here; (3) the reasonable value issue was decided in the deficiency proceeding; (4) neither party has appealed the reasonable value determination made by the district court and it cannot be raised at this late stage; and (5) AgStar was a party to the deficiency proceeding.

property foreclosure. Despite that, it sought a deficiency of almost two and a half million dollars, which would have disadvantaged Gordon Paving to the tune of about four and a half million dollars. AgStar failed in its quest for the deficiency when the district court ruled that it had received value of almost two million dollars over the amount owed, including interest, prepayment penalty, costs, and attorney fees. A creditor in AgStar's position could certainly appeal the district court's valuation of property in a deficiency proceeding, but AgStar failed to do so here. The reasonable value determined by the district court should have been credited against Gordon Paving's outstanding obligation, thereby resulting in full satisfaction of the debt. We hold that AgStar was more than made whole by virtue of the foreclosure and was entitled to no other recovery. Thus, we reverse the district court's decision allowing AgStar to sell the personal property.

**C.      This Court does not reach the issue of the district court's award of post-judgment attorney fees to AgStar because Gordon Paving does not support its claim with sufficient argument or authority.**

Gordon Paving argues that AgStar's petition for post-judgment attorney fees was untimely. However, Gordon Paving fails to cite case law or statutory authority to support its claim. "We will not consider an issue not supported by argument and authority in the opening brief. Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (internal quotations and citations omitted). "When issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered. . . . A party waives an issue cited on appeal if either authority or argument is lacking, not just if both are lacking." *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 16, 175 P.3d 172, 178 (2007) (quoting *Anson v. Les Bois Race Track, Inc.*, 130 Idaho 303, 304, 939 P.2d 1382, 1383 (1997)); *see also* I.A.R. 35(a)(6).

**D.      Because we remand the case on the issue of the district court's award of attorney fees following the deficiency judgment, this Court does not reach the exemption issue.**

Gordon Paving argues that the district court erred by allowing AgStar to claim exemption on the TKT Trucking royalty check after Gordon Paving attempted to garnish the royalties to satisfy its judgment for attorney fees in connection with the deficiency proceedings. Because we have vacated that judgment for attorney fees, we do not address this issue.

**E.     We do not award either party attorney fees or costs on appeal.**

AgStar requests attorney fees on appeal under Idaho Code sections 12-120(3) or 12-120(5). Gordon Paving requests attorney fees under Idaho Code section 12-120(3). Although Gordon Paving has prevailed on its cross-appeal, AgStar prevailed on the attorney fee issues it raised on appeal. Each party prevailed in part. Therefore, we do not award either party attorney fees or costs on appeal.

**IV.**
**CONCLUSION**

We reverse the district court's order allowing AgStar to sell the personal property collateral to satisfy the foreclosure judgment. We vacate the district court's November 18, 2014, judgment awarding attorney fees and costs to Gordon Paving. We remand for the district court to determine attorney fee and cost issues and to take other action consistent with this Opinion. We do not award attorney fees or costs on appeal.

Chief Justice BURDICK and Justice W. JONES CONCUR.


Justice EISMANN, concurring in part and dissenting in part.

I concur in the majority opinion except with respect to Part III.B., in which I respectfully dissent.  Under Idaho law, AgStar could continue selling personal property collateral to satisfy the unpaid amount of its debt.

Idaho Code section 6-108 limits deficiency judgments; it does not purport to limit collecting against collateral.  It states:

> No court in the state of Idaho shall have jurisdiction to enter a deficiency judgment in any case involving a foreclosure of a mortgage on real property in any amount greater than the difference between the mortgage indebtedness, as determined by the decree, plus costs of foreclosure and sale, and the reasonable value of the mortgaged property, to be determined by the court in the decree upon the taking of evidence of such value.

Collecting against collateral governed by the Idaho Uniform Commercial Code is expressly excluded from the provisions of Chapter 1, Title 6, of the Idaho Code.  Idaho Code section 6-101(3) states:

> As used in this section, an "action" does not include any of the following acts or proceedings:
> . . . .
> (f)  For the exercise of any right or remedy authorized by:

21

> (i) The Idaho uniform commercial code, title 28, Idaho Code, except the securing of a judgment on the secured debt, including a deficiency judgment, in a court in Idaho;

Idaho Code section 6-101(1) begins, "There can be but *one action* for the recovery of any debt, or the enforcement of any right secured by mortgage upon real estate which *action* must be *in accordance with the provisions of this chapter*." (Emphases added.) Exercising a remedy under the Idaho Uniform Commercial Code that does not seek either a judgment on a secured debt or a deficiency judgment is expressly stated not to be an *action*. A judgment on a secured debt would be a judgment for the amount owing on that debt. It would not include a judgment ordering the debtor to turn over collateral because that judgment would not be on the secured debt. The debt and the collateral are two separate things. Therefore, any such remedy is excluded from the provisions of Chapter 1, Title 6, Idaho Code.

Idaho Code section 6-101(3) cannot be circumvented by contending that the value of the real property purchased at the foreclosure sale should be credited against the amount owing. That holding is contrary to the provisions of Idaho Code section 6-101(1).

When the mortgaged property is ordered sold, Idaho Code section 6-101(1) states that "the court may, by its judgment, direct . . . the application of the proceeds of the sale to the payment of the costs of the court and the expenses of the sale, and the amount due to the plaintiff." The word *proceeds* means "the amount of money received from a sale." Black's Law Dictionary 1222 (7th ed. 1999). That definition is consistent with Idaho Code section 6-102, which states, "If there be surplus money remaining after payment of the amount due on the mortgage, lien or encumbrance, with costs, the court may cause the same to be paid to the person entitled to it, and in the meantime may direct it to be deposited in court." A credit bid is considered to be the same as a cash bid. *Fed. Home Loan Mortg. Corp. v. Appel*, 143 Idaho 42, 45, 137 P.3d 429, 432 (2006). As this Court stated in the *Federal Home Loan Mortgage* case, "There is no reason why the holder of the deed of trust note should not be able to purchase the property at a trustee sale by bidding in all or part of the amount owing pursuant to the note. . . . His bid, if successful, immediately reduces or eliminates the debtor's obligation." *Id.*

When a mortgagee makes a credit bid, the amount of that bid is the proceeds of the sale. In order to obtain its desired result, the majority ignores Idaho Code section 6-101(1) and creates the fiction that the proceeds from the sale of real property are the value of the real property sold.

22

I cannot agree with the majority because I believe that the Court should follow the applicable law. I would decide this case simply by following the statute.

The mortgagor has a statutory remedy if the mortgaged property is sold for significantly less than its fair market value. Pursuant to Idaho Code section 11-401, the mortgagor has a right of redemption. If the mortgagor could find a purchaser who was willing to pay what the mortgagor claims the property is worth, the mortgagor could sell its right of redemption to that purchaser.

Justice HORTON CONCURS.