# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43747

AGSTAR FINANCIAL SERVICES, ACA, )
)
    Plaintiff-Respondent, )
) **Boise, December 2016 Term**
v. )
) **2017 Opinion No. 18**
GORDON PAVING COMPANY, INC.; )
NORTHWEST SAND & GRAVEL, INC.; ) **Filed: February 27, 2017**
BLACKROCK LAND HOLDINGS, LLC; )
BRANDON HANSEN, an individual; ) **Stephen Kenyon, Clerk**
BRIAN HANSEN, an individual; )
CAROL HANSEN GPC NEVADA TRUST; )
CRAIG HANSEN GPC NEVADA TRUST; )
CANYON EQUIPMENT AND TRUCK )
SERVICE, INC.; DOE ENTITIES OWNED )
BY BRIAN, BRANDON AND CRAIG )
HANSEN, )
)
    Defendants-Appellants. )

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

The judgment of the district court is <u>reversed</u>.

Robinson & Tribe, Rupert, for appellants. Brent T. Robinson argued.

Givens Pursley LLP, Boise, for respondent. Kersti Kennedy argued.

_____

J. JONES, Justice Pro Tem.

    Gordon Paving Company, Inc., Northwest Sand & Gravel, Inc., Blackrock Land Holdings, LLC (collectively, "Gordon Paving"), Brandon Hansen, an individual, Brian Hansen, an individual, Carol Hansen GPC Nevada Trust, Craig Hansen GPC Nevada Trust, Canyon Equipment and Truck Service, Inc., and Doe Entities owned by Brian, Brandon, and Craig Hansen (collectively "Guarantors") appeal from the judgment entered following the district

1

court's denial of their motion to set aside default in a breach of personal guarantee action brought by AgStar Financial Services, ACA ("AgStar"). We affirm.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

Between 2007 and 2008, Gordon Paving borrowed $10 million from AgStar. In addition to real and personal property collateral, the indebtedness was secured by separate guarantee agreements executed by Guarantors. By 2012, Gordon Paving had defaulted and AgStar sued for foreclosure.

On June 19, 2013, the district court entered a Judgment and Decree of Foreclosure against Gordon Paving. AgStar purchased the real property collateral at a foreclosure sale with credit bids totaling $7,200,000. Following the sale, AgStar moved for entry of a deficiency judgment for the difference between the unpaid judgment as of the time of the sale and its credit bids for the real property. The district court denied AgStar's motion for a deficiency judgment, finding that the reasonable value of the properties that AgStar purchased by credit bids was nearly two million dollars greater than Gordon Paving's indebtedness. Gordon Paving appealed to this Court. In an Opinion issued on February 24, 2017, we held that Gordon Paving's indebtedness to AgStar had been fully satisfied and discharged. *AgStar Financial Services v. Northwest Sand and Gravel*, Docket No. 42932 (*AgStar I*).

On June 1, 2015, AgStar brought the present action against Guarantors, advancing a number of theories, including breach of personal guarantee. On July 8, 2015, AgStar filed its Application for Entry of Default against Guarantors. On July 9, 2015, the district court entered default against all defendants.

On July 15, 2015, Guarantors filed a motion to set aside the default and moved to dismiss the action based on *res judicata*. On October 19, 2015, the district court heard the motions and denied the motion to set aside the default, holding that Guarantors had not shown the existence of a meritorious defense. The district court then entered a judgment against Guarantors on the cause of action based on breach of their personal guarantees. AgStar agreed to dismiss the other claims with prejudice because the judgment on the guarantees represented the total remaining amount due on Gordon Paving's indebtedness. On November 12, 2015, AgStar moved for an award of attorney fees and costs. On December 18, 2015, the district court awarded AgStar attorney fees and costs after Guarantors failed to file a timely objection. Guarantors timely appealed.

2

## II.
## STANDARD OF REVIEW

A court may set aside an entry of default for good cause. I.R.C.P. 55(c). The power of a trial court to grant or deny relief under Rule 55(c) is discretionary. *McGloon v. Gwynn*, 140 Idaho 727, 729, 100 P.3d 621, 623 (2004). "When a default judgment is predicated upon an erroneously entered default, the judgment is voidable." *Id.* Because judgments by default are not favored, a trial court should grant relief in doubtful cases in order to decide the case on the merits. *Jonsson v. Oxborrow*, 141 Idaho 635, 638, 115 P.3d 726, 729 (2005).

> Two requirements must be met to set aside a default judgment. Under rule 60(b)(1), a party may ask for relief from a default judgment on the grounds of mistake, inadvertence, surprise, or excusable neglect. In addition, the moving party must plead facts which, if established, would constitute a meritorious defense to the entry of default.

*Clear Springs Trout Co. v. Anthony*, 123 Idaho 141, 845 P.2d 559, 561 (1992). The meritorious defense requirement is a pleading requirement, not a burden of proof. *Cuevas v. Barraza*, 146 Idaho 511, 518, 198 P.3d 740, 747 (2008). "To establish a meritorious defense, a party moving to set aside a default judgment is not required to present evidence in order to have the default judgment set aside." *Id.*

"A trial court's refusal to set aside a default judgment is reviewed under an abuse of discretion standard." *Idaho State Police ex rel. Russell v. Real Prop. Situated in Cnty. of Cassia*, 144 Idaho 60, 62, 156 P.3d 561, 563 (2007). "The decision will be upheld if it appears that the trial court (1) correctly perceived the issue as discretionary, (2) acted within the boundaries of its discretion and consistent with the applicable legal standards, and (3) reached its determination through an exercise of reason." *Id.*

## III.
## ANALYSIS

The district court determined that the Guarantors had shown excusable neglect sufficient to satisfy Rule 60(b)(1) but that the Guarantors had failed to present a meritorious defense. The question presented on appeal is whether the court erred in concluding the Guarantors had not advanced a meritorious defense. The district court explained its conclusion as follows:

> The meritorious defense that is being raised in this case with regard to defendants Brian Hansen; Carol Hansen, GPC Nevada Trust; and Craig Hansen, GPC Nevada Trust, is that the personal guarantee claim should have been raised in the first lawsuit between AgStar and Gordon Paving and others. The court finds, over the objection of these three defendants, based upon the supreme

3

court's ruling in First Security Bank of Idaho versus Gaige, G-a-i-g-e, 115 Idaho 172, 1988, that the operation of the antideficiency statute as applied to deeds of trust in that case is likewise applicable to the antideficiency statute relating to the mortgage in this case, albeit they are separate and distinct statutes; same principle, in my view, and the Court ruled that the antideficiency statute does not preclude a separate and distinct action by guarantors to enforce a debt. I realize there's some exceptions, some differences in this First Security Bank case because the case never went to an actual deficiency hearing, but doesn't matter. If the statute doesn't apply, it doesn't apply whether it was or wasn't a deficiency. And therefore, as to those three defendants, there is no meritorious defense, as a matter of law, that can be raised, and that is the only meritorious defense that has been raised to set aside the default.

The district court misconceived the basic thrust of the Guarantors' argument. The Guarantors did invoke Idaho Code section 6-108 and also asserted that AgStar's right to recovery on the guaranteed debt was precluded by the doctrine of *res judicata*. However, the district court overlooked how the Guarantors wove those arguments together at the hearing on the motion to set aside the default.

Considered as a whole, the Guarantors' argument was that AgStar was not entitled to recover additional monies from them because the debt they had guaranteed had been fully paid by virtue of the foreclosure. In response to a question from the district court regarding why AgStar could not pursue a personal guarantee, counsel for Guarantors responded "you can't collect twice." He continued:

If you're entitled to a hundred thousand dollars, and you get the hundred thousand dollars from the initial party, the party who's agreed to pay the debt, you can't turn around and sue the guarantors for something that gets you duplication. . . . If [AgStar had] sold that property for, instead of 7 million, sold it for 9.5 million, we wouldn't be here today. Couldn't be here today because of the fact is that they had sold it, and they bought the property at the sheriff's sale for the 9.5 million. Then the result is they have no underlying debt. Debt's paid. How do they then go after the guarantors for a debt that's been paid.

* * *

So when the court finds that [the property is] worth more than [AgStar is] owed, the result should be the same. How do they now have a debt that they can use and collect from the guarantor? Guarantors? Because they've been paid.

A fair reading of what the Guarantors were asserting is that the district court in *AgStar I* had determined AgStar acquired real property in the foreclosure whose reasonable value exceeded the debt, that AgStar had thus been fully paid and that it was entitled to no further recovery against any of the defendants. The defense would be more properly characterized as a

4

claim of extinguishment of the guaranteed debt by payment, rather than anything else. This case is somewhat akin to *Maynard*, where this Court, after observing that the "district court merely mischaracterized the nature of the [defendants'] meritorious defense," took a fresh look at the facts alleged and then put them in proper context. *Maynard*, 152 Idaho at 729, 274 P.3d at 594.

The district court could not have known how we would decide *AgStar I*, but the Guarantors' argument fairly well tracks with the decision made by this Court in that case. In *AgStar I*, we observed:

> [Th]e district court determined that by virtue of the foreclosure on the real property, AgStar obtained title to real property worth, at the least, $1,896,765 more than the amount Gordon Paving owed to AgStar. Stated another way, the reasonable value of the foreclosed properties exceeded AgStar's credit bids by at least $4,510,105. AgStar did not appeal the district court's valuations.

*Id*. at 10. We continued:

> The question before this Court is whether, in spite of the surplus value received by AgStar in the real property foreclosure, AgStar was entitled to obtain additional recovery by realizing upon its personal property collateral. We hold that Gordon Paving's indebtedness to AgStar had been fully satisfied and it was not entitled to seek additional monies from Gordon Paving.

*Id.* at 11. We concluded:

> The reasonable value determined by the district court should have been credited against Gordon Paving's outstanding obligation, thereby resulting in full satisfaction of the debt. We hold that AgStar was more than made whole by virtue of the foreclosure and was entitled to no other recovery. Thus, we reverse the district court's decision allowing AgStar to sell the personal property.

*Id.* at 20.

In making its decision in this case, the district court relied on *First Sec. Bank of Idaho, N.A. v. Gaige*, 115 Idaho 172, 765 P.2d 683 (1988). That case is good law, but it does not have application here. There are two critical differences between this case and *Gaige*. First, in *Gaige* the secured creditor did not seek a deficiency judgment. *Id.* at 173, 765 P.2d at 684. Thus, there was no contested proceeding to determine the reasonable value of the real property and no opportunity to determine whether the amount credited against the debtor's obligation should have been a different amount than First Security's credit bid. Second, there is evidence in the record that First Security, which "was the highest bidder" at the sale, paid very close to market value. *Id.* The bid was not a low-ball bid, as determined by the district court in *AgStar I*.

5

Based on this Court's decision in *AgStar I*, it is rather apparent that the Guarantors asserted a meritorious defense to AgStar's action against them on the guarantee. Therefore, the district court (unknowingly) abused its discretion and acted inconsistent with applicable legal standards in failing to set aside the default judgment. The indebtedness to AgStar, which the Guarantors had guaranteed, was fully satisfied and extinguished in *AgStar I* and there is no basis for any recovery here against the Guarantors.

The Guarantors seek attorney fees on appeal pursuant to Idaho Code section 12-120(3). The Guarantors have prevailed on appeal and they are entitled to recover their attorney fees under Section 12-120(3).

## IV.
## CONCLUSION

We reverse the judgment of the district court and award Guarantors their costs and attorney fees on appeal.

Chief Justice BURDICK and Justice W. JONES CONCUR.


Justice EISMANN, dissenting.

I cannot concur in the majority opinion because it is contrary to the law.

The issue is whether Guarantors, who guaranteed promissory notes secured by mortgages on real property, can be held liable on their guaranties when the proceeds of the foreclosure sales of the mortgaged properties is not sufficient to pay the balances owing on the notes secured by those mortgages.

Guarantors do not have the protection of Chapter 6, Title I, of the Idaho Code. Neither Idaho Code section 6-101, which requires the foreclosure of a mortgage in order to recover on a debt secured by that mortgage, nor Idaho Code section 6-108, which limits the amount of a deficiency judgment against the mortgagor, applies to an action to recover against a guarantor of a note that is secured by a mortgage.

In *Jeppesen v. Rexburg State Bank*, 57 Idaho 94, 62 P.2d 1369 (1936), this Court held that a bank could collect against an indorser on a promissory note without first seeking to foreclose the mortgage secured by that note, where the promise to pay on default of the maker was not secured by the mortgage. *Id*. at 101, 62 P.2d at 1372. This Court reasoned as follows:

6

> When a debtor gives a mortgage to secure his debt, he gives his creditor a lien on his property and thereby authorizes him, at maturity of the debt, to proceed in rem against the property for the amount of the debt. This necessarily impairs the debtor's credit to that extent; and it was the evident intention of the Legislature, by enacting section 9-101 [former Idaho Code section 6-101], to require the creditor to proceed for collection of the debt (if not paid in due course) against the property, and to exhaust the security before being allowed to acquire any personal judgment against the debtor. . . . .
>
> Here the *indorser* has not mortgaged any of his property as security, either for the primary obligation, that is, the debt of the maker, or for his secondary obligation as indorser; and so far as *his debt is concerned*, whenever or however it accrued, it is unsecured by any mortgage on property of any kind.

*Id*. at 99, 62 P.2d at 1371.

In *First Security Bank of Idaho, N.A. v. Gaige*, 115 Idaho 172, 765 P.2d 683 (1988), this Court held that Idaho Code section 45-1512, which limits the amount of a deficiency judgment on an obligation secured by a deed of trust, did not apply to a guarantor of the obligation. *Id*. at 174, 765 P.2d at 685. We declined to legislate from the bench and create a rule protecting the guarantor from the terms of his contractual obligation, stating: "While there may be arguments for extending anti-deficiency protection to guarantors, that action is for the legislature to do, not the court. . . . We deem it better policy to follow the wording of the statute and leave any expansion of coverage to the legislature." *Id*. at 174–75, 765 P.2d at 685–86.

After our *Jeppesen* and *First Security Bank* opinions, the Idaho legislature has not acted to protect guarantors of obligations secured by mortgages or deeds of trust. In this case, the majority steps in to allow guarantors to escape the consequences of their guaranties. As explained in my dissent in *AgStar Financial Services, ACA, v. Northwest Sand & Gravel, Inc.*, the majority does so by creating a fiction that the value of the real property sold constitutes the proceeds from the sale of that property. Using that fiction, the majority holds that the debts that Guarantors guaranteed have been paid in full. As I stated in my dissent in *AgStar Financial Services, ACA, v. Northwest Sand & Gravel, Inc.*: "I cannot agree with the majority because I believe that the Court should follow the applicable law. I would decide this case simply by following the statute."

Justice HORTON CONCURS.

7